Wilbert James TEAL, Appellant,

v.

The STATE of Texas.

No. PD–0689–06.

Court of Criminal Appeals of Texas.

March 7, 2007.

Bill Burnett, Coldspring, for Appellant.

1. Tex. Penal Code § 38.05.

2. *Teal v. State*, 187 S.W.3d 80, 83 (Tex.App.-Beaumont 2006).

Dale Summa, Asst. D.A., Lufkin, Matthew Paul, State's Attorney, Austin, for State of Texas.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, KEASLER and HOLCOMB, JJ., joined.

Appellant was indicted for the offense of hindering apprehension.[1] The indictment failed to allege that appellant knew that Curtis Brown, the person whose apprehension appellant was hindering, was a fugitive for Failure to Register as a Sex Offender. The court of appeals held that the district court never acquired subject-matter jurisdiction to try the case because the indictment alleged only a misdemeanor.[2] We granted the State's Petition for Discretionary Review to determine whether "the court of appeals erred in holding that the indictment presented in this case was insufficient to vest the district court with subject-matter jurisdiction." We hold that, under *Studer v. State*,[3] the indictment sufficed to vest jurisdiction in the district court. Therefore, we vacate the judgment of the court of appeals and remand the case to that court to address appellant's remaining claims.

### I.

On June 8, 2004, Lufkin police received a Crimestopper's tip that a fugitive, Curtis Brown, was staying at appellant's house. When police officers arrived at his house, appellant was sitting on the front porch with his front door open. Officer Burfine told appellant that they were looking for Brown, a fugitive with outstanding parole violator and sex offender warrants. He informed appellant that both of these were

3. 799 S.W.2d 263 (Tex.Crim.App.1990).

felony warrants. Officer Burfine told appellant that they had information that Brown was in the house. Appellant said that he had seen Brown the night before, but that he had not seen Brown that day. He repeatedly denied that Brown was in the house, and he refused to allow the police to enter his house.

Meanwhile, Officer Smith heard noises from the rear of the house, so he went to check and discovered Brown attempting to flee. Officer Smith arrested Brown. The officers also found another man who had an outstanding sexual assault warrant when they searched appellant's house.

Appellant was indicted for the offense of hindering apprehension. The indictment alleged that appellant

> ... then and there intentionally, with intent to hinder the arrest, prosecution, or punishment of Curtis Brown for the offense of Failure to Comply with Registration as a Sex Offender, did harbor or conceal Curtis Brown by stating to peace officers that Curtis Brown was not present at said residence occupied by defendant at a time when Curtis Brown was then and there present. ...

As soon as the jury was empaneled, appellant objected to the indictment and argued that the district court did not have jurisdiction because the indictment alleged only a misdemeanor, not a felony.[4] The trial court overruled his objection. After hearing the evidence, the jury convicted appel-

lant and sentenced him to two years in prison.

On appeal, appellant argued that the evidence was legally and factually insufficient and that the jury instructions were erroneous.[5] The court of appeals, however, *sua sponte* addressed the issue of whether the trial court had subject matter jurisdiction. A two-justice majority of the court of appeals stated that the indictment failed to allege "that Teal had *knowledge* of Brown's felony fugitive status so as to facially charge a third degree felony under section 38.05, and vest the district court with subject-matter jurisdiction."[6] Because the charging instrument did not charge an offense that fell within the district court's jurisdiction, the court of appeals concluded that the district court should have transferred the indictment to a county court with misdemeanor jurisdiction.[7] Justice Gaultney dissented and stated that the indictment did vest the district court with jurisdiction.[8] Relying on the Texas Constitution and this Court's decision in *Studer v. State*, Justice Gaultney concluded that the indictment was valid because "[a]n indictment vests the court with jurisdiction even if it fails to allege an element of the offense."[9]

## II.

■ The Texas Constitution requires that, unless waived by the defendant, the State must obtain a grand jury indictment in a felony case.[10] Absent an indictment or valid waiver, a district court does not

---

4. The misdemeanor offense of hindering apprehension becomes a felony when the person who is being harbored "is under arrest for, charged with, or convicted of a felony ... and the person charged under this section knew that the person they harbored ... is under arrest for, charged with, or convicted of a felony[.]" TEX. PENAL CODE ANN. § 38.05(c).

5. *Teal*, 187 S.W.3d at 81.

6. *Id.* at 82.

7. *Id.* at 83.

8. *Id.* (Gaultney, J., dissenting).

9. *Id.* (Gaultney, J., dissenting).

10. TEX. CONST. art. I, § 10.

have jurisdiction over that case.[11] An indictment also provides a defendant with notice of the offense and allows him to prepare a defense.[12] Further, the "constitutional guarantee is intended to provide the accused an impartial body which can act as a screen between the rights of the accused and the prosecuting power of the State." [13]

Before 1985, defects of form and defects of substance in an indictment had very different results.[14] Failure to object to a defect of form waived any error on appeal, but the failure to object to a defect of substance did not waive error on appeal.[15] The reasoning was that an indictment that contained a substantive defect was "void" and therefore insufficient to invoke the jurisdiction of the court. Under this reasoning, a defendant could attack a felony conviction based on a substantively defective indictment on appeal, even though he had not objected at trial.[16] Defendants could "lie behind the log," and either plead guilty or take their chances at trial and, if convicted, then raise a claim of a "void" indictment in a later appeal or application for habeas corpus relief.[17] Numerous decisions from this Court exhaustively debated the fine technical distinctions between defects of form and those of substance, and numerous decisions from this Court reversed convictions years after the fact for

11. *Cook v. State,* 902 S.W.2d 471, 475–76 (Tex.Crim.App.1995) (collecting cases and stating, "Jurisdiction vests only upon the filing of a valid indictment in the appropriate court.").

12. *Id.*

13. Brian A. Kilpatrick, Comment, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after Studer v. State and the 1985 Constitutional and Statutory Amendments?*, 44 BAYLOR L.REV. 345, 345 (1992); *see also Riney v. State,* 28 S.W.3d 561, 565 (Tex. Crim.App.2000) (noting that indictments are used to "protect[ ] citizens against arbitrary accusations by the government.").

14. *See American Plant Food, Corp. v. State,* 508 S.W.2d 598, 602 (Tex.Crim.App.1974) (stating, "This distinction between an objection to the charge based on substance and one based on form, subtle though it be, is well founded in reason, in justice, and in the logic of the Code of Criminal Procedure.").

15. *See id.* at 603 ("If the charge alleges an offense was committed by the defendant, then it is sufficient in law to support a verdict of guilty if one be rendered thereon. If it does not so allege, then it is utterly insufficient and any conviction based thereon is void. A void conviction may be challenged at any time and thus an exception to the substance of the State's pleading ... may be raised for the first time on appeal.") (footnote omitted).

16. *See Studer,* 799 S.W.2d at 266–68 (noting, "For more than a century cases have come from this Court holding that a defect in the 'substance' of a charging instrument may be raised for the first time on appeal for it renders the charging instrument 'fundamentally defective.' "). Some of these indictment problems involved the failure to allege a specific element of the offense. *See, e.g., Standley v. State,* 517 S.W.2d 538, 540–41 (Tex. Crim.App.1975). Some errors concerned the specificity of the indictment. *See, e.g., Chance v. State,* 563 S.W.2d 812, 813 (Tex.Crim.App. 1978) (op. on reh'g) (even though indictment alleged that defendant supervised, controlled, and managed prostitution ring, it was fundamentally defective because it did not allege that he "knowingly" did so); *see also* David Weiner, Comment, *Particularity and Precision in Texas Indictments and Informations: What Is Fundamental Defect?*, 10 ST. MARY'S L.J. 281, 282–84 (1978–1979).

17. Robert R. Barton, *Since 1985, Can an Indictment or Information Be "Fundamentally" Defective for Failing to Charge an Offense?*, 25 ST. MARY'S L.J. 217, 222–224 (1993). "Being void, a judgment of conviction entered on an indictment or information containing such a defect of substance could be attacked by the defendant at any time, either directly for the first time on appeal or collaterally by postconviction application for writ of habeas corpus." *Id.* at 223.

defects of substance in the indictment.[18]

In 1985, the citizens of Texas and their legislature resoundingly rejected this hypertechnical case law both by Constitutional amendment and by statute. The voters amended the Texas Constitution to include the definition of an indictment. An indictment, as now defined by the Texas Constitution, is

> a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information invests the court with jurisdiction of the cause.[19]

■ As part of the same reform package, the legislature amended several provisions of the Code of Criminal Procedure to ensure that indictment defects could be objected to and repaired pretrial, but that these defects would not invalidate an otherwise valid conviction if not raised before trial. For example, the implementing legislation added section (b) to article 1.14:

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.[20]

Additionally, the legislature amended article 28.10 to ensure that the State had ample opportunity to repair indictment defects and that the defendant received the requisite notice of indictment changes, as well as an opportunity to respond to them:

---

**18.** *Studer* cited several cases that demonstrate the number and variety of convictions reversed for indictment errors. *See, e.g., Carpenter v. State,* 551 S.W.2d 724, 725–26 (Tex. Crim.App.1977) ("Hence, a false imprisonment indictment which alleges mere restraint does not invoke the jurisdiction of the district court, unless the indictment also sets out the added penalty allegations of Section 20.02(c).... Clearly, the indictment in this case does not allege that the appellant recklessly exposed the complainant to a substantial risk of serious bodily injury; felony false imprisonment has not been alleged."); *Ex parte Winton,* 549 S.W.2d 751 (Tex.Crim.App. 1977) (indictment defective for failure to allege a culpable mental state). *See generally Pospishel v. State,* 95 Tex.Crim. R. 625, 255 S.W. 738 (1923) (op. on reh'g); *Williams v. State,* 12 Tex. Ct.App. 395 (1882); *White v. State,* 1 Tex. Ct.App. 211 (1876). *See also Fisher v. State,* 887 S.W.2d 49, 55 n. 8 (Tex. Crim.App.1994) (detailing the history of in-

dictment dismissals pre-*Studer:* "Some other defects of substance, in addition to a missing element, that were recognized prior to the 1985 amendments included failure to allege date of offense, culpable mental state, victim's name, enhancement allegations, amount of a controlled substance, and manner and means of committing the offense where it is the manner and means that renders the act criminal.") (collecting cases).

**19.** TEX. CONST. art. V § 12(b); *see also* TEX.CODE CRIM. PROC. art. 21.01 (defining indictment as "the written statement of grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense"); *see generally Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990) (detailing the legislative history of the constitutional amendment and changes to the Code of Criminal Procedure).

**20.** TEX.CODE CRIM. PROC. art. 1.14(b).

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.[21]

The legislature's purpose in amending the constitution and the statutes was to change the focus from "whether a defect is fundamental [*i.e.* a defect of substance or not]" to "whether the defendant brought the defect to the court's attention."[22] And the

legislature intended the constitutional provision and statutes to work together. That is, indictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance.[23] The 1985 statutes clearly mandate that defendants must object to errors in the form or substance of an indictment "before the date on which the trial on the merits commences[.]"[24] Thus, Texas law now requires the defendant to object to any error in the indictment before the day of trial and certainly before the jury is empaneled.

This Court's first interpretation of the indictment reform legislation did not come "clad, so to speak, in sheep's clothing." Instead this "wolf came as a wolf."[25] The wolf was *Studer*, and this Court was clear: raise indictment defects before the date of trial. In *Studer*, the defendant was charged by information with indecent exposure.[26] He pled nolo contendere, and, on direct appeal, despite having failed to object in the trial court, claimed that the information was fatally defective.[27] The defendant complained "that the informa-

21. Tex.Code Crim. Proc. art. 28.10.

22. Brian A. Kilpatrick, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after Studer v. State and the 1985 Constitutional and Statutory Amendments?*, 44 Baylor L.Rev. 345, 350 (1992).

23. *Studer*, 799 S.W.2d at 268.

24. Tex.Code Crim. Proc. art. 1.14(b). Also, art. 1.14(b) and art. 28.10 are read together for the proposition that "[i]f the defendant fails to raise a substance defect prior to trial, he or she waives that right; if the defect is raised, the State can then amend the indictment to include the missing element." Kilpatrick, *supra*, note 22 at 355.

25. *Morrison v. Olson*, 487 U.S. 654, 699, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J. dissenting). *See also Fisher v. State*, 887 S.W.2d 49, 55 (Tex.Crim.App.1994) ("Ex-

pressing frustration over the ability of a defendant to raise substantive defects in the indictment for the first time on appeal, the 69th Legislature submitted for approval to the voters an amendment to article V, § 12 of the Texas Constitution which would give the legislature authority to regulate practices and procedures relating to the use of indictments and informations. The proposed amendment was approved by the voters, and the legislature accordingly passed amendments to the Texas Code of Criminal Procedure, all effective December 1, 1985.") (footnote omitted).

26. *Studer*, 799 S.W.2d at 264.

27. *Id.* at 264–65. The information alleged that the defendant

did unlawfully then and there intentionally and knowingly expose his genitals to R.E. Bishop, hereinafter called complainant,

tion was defective for failing to 'allege, with reasonable certainty, the act or acts relied upon to constitute recklessness[.]' "[28] He argued that the trial court therefore never obtained jurisdiction.[29] In *Studer*, we addressed the legislative history and purpose of the constitutional amendment[30] and rejected the defendant's "fatally flawed indictment" claim:

> Clearly both the House and Senate believed that all defects in a charging instrument were waived if not raised by a defendant before trial. Clearly the perceived evil that they were correcting was the raising of indictment defects for the first time after a trial and conviction and the subsequent reversal of that conviction because of that defect.[31]

We also concluded that the 1985 constitutional amendment made the specifics of an indictment or information statutory requirements, not constitutional requirements.[32] Thus, all substantive defects in indictments are waiveable under the statutes and these defects do not render the indictment "void."[33]

In the five years after *Studer*, this Court addressed indictment defects and *Studer* related issues approximately thirty times. Those cases consistently reiterated the same proposition: "In *Studer* ... we interpreted the amendments to art. V, § 12(b) and art. 1.14 and held a defect in a charging instrument is waived unless raised prior to trial."[34]

■ The "fatally flawed indictment" is-

---

with intent to arouse and gratify the sexual desire of the said [defendant], and the [defendant] acted recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act....
*Id.* at 265.

**28.** *Id.*

**29.** *Id.*

**30.** *See id.* at 267–71 (setting out the history of appellate reversals for indictment flaws and citing comments by Senator Ike Harris: "What this basically does ... it's a bill that deals with that problem that has plagued the criminal justice system and the Court of Criminal Appeals over a number of years, that involves a defective indictment which a defense goes to trial upon, makes no objection, then raises on appeal for the first time, then the court reverses, based upon that defect in the indictment and the lower court has never had the opportunity to rule upon that question. There are a number of cases that have been reversed on those technicalities."). *See also id.* at 274–284 (appendices containing the House Legislative report and the Texas Legislative Council report on the proposed constitutional amendment).

**31.** *Id.* at 270–71.

**32.** *Id.* at 272.

**33.** *Id.* (stating, "In sum, the wording of Article V, § 12(b), that provides 'an indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense; an information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense,' abolishes the former prerequisites to which the referred to charging instruments must adhere, lest they fail as charging instruments, at least from the standpoint of Art. V, Section 12."). We noted that the omission of an element of the offense was "still a defect of substance in an indictment, [so] it naturally follows that the indictment is still an indictment despite the omission of that element." *Id.* at 268.

**34.** *Ex parte Matthews*, 873 S.W.2d 40, 41 (Tex.Crim.App.1994). *See, e.g., Fisher v. State*, 887 S.W.2d 49, 60–61 (Tex.Crim.App. 1994) (addressing whether an indictment is facially incomplete and analyzing the sufficiency of the evidence in relation to that indictment); *State v. Yount*, 853 S.W.2d 6, 8–9 (Tex.Crim.App.1993) (considering whether an indictment is sufficient if it indicates an offense date that is barred by the statute of limitations, and holding that "jurisdiction was conferred upon the trial court by the presentment of the charging instrument, even if the charging instrument was flawed.... If the defendant failed to direct the trial court's attention to the defects in the charging instru-

sue was raised again in *Cook v. State*,[35] in which the charging instrument did not charge "a person." No person was alleged to have committed the offense. This was too much. We noted in *Cook* that the 1985 constitutional amendment defined an indictment: "To constitute an indictment, the charging instrument must charge: (1) a person, and (2) the commission of an offense. It is clear, however, that if the charging instrument fails to charge a person, then it is not an indictment as required by art. V, § 12(b) and art. I, § 10."[36] It was this premise, that the Constitution expressly required that *a person* be charged with an offense, that led us to conclude that "[i]f the charging instrument fails to charge 'a person' then it is not an indictment and does not vest the trial court with jurisdiction. Moreover,

because a valid indictment is essential for jurisdiction, it is not subject to waiver."[37] Accordingly, *Cook* held that, because the charging instrument failed to charge a person, it did not meet one of the two requirements of an indictment, and therefore, it was not an indictment at all and did not vest any trial court with jurisdiction.[38]

*Studer* and *Cook* are "book-end" cases. *Studer* held that the defendant must object to any indictment defects before the date of trial or forfeit any complaint about its sufficiency thereafter. *Cook* held that the Texas Constitution requires that an indictment allege that (1) a person, (2) committed an offense. Without both of those elements the charging instrument is not an indictment and does not vest the district court with jurisdiction.

ment before trial, the defendant would be precluded from raising those defects 'on appeal or in any postconviction proceeding.' Therefore, an indictment which charges the commission of an offense barred by limitations still confers jurisdiction upon the trial court, such that the defendant must bring the defect to the attention of the trial court in order to preserve any error."); *Ex parte Morris*, 800 S.W.2d 225, 227 (Tex.Crim.App.1990) ("In the case at bar, the indictment in question clearly fails to allege a constituent element of the offense of forgery, namely, that the writing purported to be the act of another 'who did not authorize the act.' ... However, the charging instrument was issued by the grand jury, filed with the district clerk and purports to charge applicant with the primary offense of forgery. Pursuant to the rationale in *Studer* and *Gibson*, this instrument is an indictment as contemplated by Art. V, § 12(b).... Article 1.14(b) prohibits applicant from raising the defect in the indictment for the first time in a postconviction proceeding."); *Rodriguez v. State*, 799 S.W.2d 301, 303 (Tex.Crim.App.1990) (in evading arrest information, "[t]here [was] no allegation that appellant knew the complainant was 'a peace officer attempting to arrest him.'... Thus, the information failed to allege one element of the offense of evading arrest. The failure of a charging instrument to allege an element of

an offense is a substance defect.... Clearly then, the information in this cause suffered from a defect of substance by failing to allege appellant knew the complainant was a peace officer who was attempting to arrest him. But the information in this cause was, 'on its face,' an information. Thus, the information was not 'fundamentally defective', and it did invest the trial court with jurisdiction. We find, therefore, that appellant has waived this defect under Art. 1.14(b) because of his failure to object to this defect 'before the date on which the trial on the merits commenced.' "); *Ex parte Gibson*, 800 S.W.2d 548 (Tex.Crim. App.1990) (holding that defects, errors, and irregularities of either form or substance in an indictment or information must be raised by pretrial objection or are waived in postconviction proceedings; indictment that failed to allege year of alleged offense contained a substantive defect, but because defendant failed to object to this defect pretrial, he could not raise it in a postconviction proceeding).

35. 902 S.W.2d 471 (Tex.Crim.App.1995).

36. *Id.* at 477.

37. *Id.* at 480 (footnote omitted).

38. *Id.*

■ The proper test to determine if a charging instrument alleges "an offense" is whether the allegations in it are clear enough that one can identify the offense alleged. If they are, then the indictment is sufficient to confer subject matter jurisdiction.[39] Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged and is that penal code provision one that vests jurisdiction in the trial court? With this background, we turn to the present case.

### III.

■ Appellant alleges that the present indictment was missing one of the elements that raises the offense of Hindering Apprehension from a misdemeanor to a felony:

In order for the State to prosecute Appellant for the third degree felony offense of hindering apprehension in district court the State had to additionally allege and prove that the person, in the present case Curtis Brown, who was allegedly being harbored or assisted was facing arrest, charge or had been convicted of a felony and that Appellant had knowledge that the person (Curtis Brown) who he was allegedly harboring or assisting had been convicted of a felony.[40]

Appellant further argues that "[e]ven though the indictment in the instant case did state that Curtis Brown did have felony fugitive status for failure to comply with Registration as a Sex Offender it failed to additionally allege that Appellant had knowledge of Curtis Brown's *felony* fugitive status."[41] Thus, appellant contends that the indictment was defective because it did not explicitly state that appellant knew that Curtis Brown was a felon. This defect, he contends, was jurisdictional and thus it "may be raised at any time [because] . . . . [j]urisdiction is a systemic requirement that cannot be waived or conferred by consent and which may be considered at any time."[42]

The State responds that it did allege that appellant was harboring a fugitive, and "it is clear that the State intended to prosecute the defendant for the felony offense of Hindering Apprehension, by including the language 'with intent to hinder the arrest, prosecution, or punishment' of Curtis Brown for the offense of Failure to Comply with Registration as a Sex Offender."[43] This offense is itself a felony, which, the State argues, clearly indicates its intent to prosecute appellant for the felony offense of Hindering Apprehension.[44]

■ After *Studer* and *Cook*, courts must now look to the indictment as a whole, not to its specific formal requisites. Constitutionally, district courts have jurisdiction over a felony when an indictment charging a person with an offense is signed by the grand jury foreman and presented to the

39. *Cook*, 902 S.W.2d at 481 (Maloney, J., concurring).

40. Appellant's Brief at 7.

41. *Id.*

42. *Id.* at 9.

43. State's Brief at 14.

44. *Id.* at 14–15. Ample evidence at trial showed that appellant had knowledge of Brown's felony status: Officer Burfine testified that he told Appellant that (1) the police were looking for Curtis Brown, (2) Curtis Brown was a fugitive, (3) Curtis Brown had an outstanding parole warrant and a sex offender violation warrant, and (4) both were felony warrants.

district court. In *Duron v. State*,[45] this Court held that "a written instrument is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective."[46] We stated that

> all that *Studer* and *Cook* require to satisfy the mandate of Art. V, § 12 [is] that an indictment charge "the commission of an offense." This is true whether an indictment fails to allege one element of an offense or whether it contains additional information that may indicate innocence.[47]

■ Implicit within both. *Studer* and *Cook* is that "the offense" charged must be one for which the trial court has subject-matter jurisdiction. Although the "indictment" provision of the constitution explicitly speaks only of the two requirements of "a person" and "an offense," the constitution also sets out the subject-matter jurisdiction of Texas courts.[48] An indictment must also satisfy the constitutional requirement of subject-matter jurisdiction over "an offense."

Thus, the complete test for the constitutional sufficiency of a particular charging instrument goes slightly further than that expressly set out in *Studer* and *Cook*: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction? Suppose, for example, that a named person is indicted for the offense of speeding. The constitutional requirements of an indictment are met—a named person and an offense—but district courts do not have subject-matter jurisdiction over speeding offenses, regardless of how "perfect" the wording of the charging instrument might be. Thus, the indictment, despite whatever substantive defects it contains, must be capable of being construed as intending to charge a felony (or a misdemeanor for which the district court has jurisdiction).

The element that was missing in this indictment was whether appellant knew that Brown was a felony fugitive. This is one of the two *mens rea* requirements for Hindering Apprehension.[49] We have pre-

---

**45.** 956 S.W.2d 547, 551 (Tex.Crim.App.1997).

**46.** *Id.* at 550–51; *see also Ramirez v. State*, 105 S.W.3d 628, 629–30 (Tex.Crim.App.2003) ("The appellant filed a motion to dismiss the complaint based on the fact that her name was incorrectly set out.... In this case, the appellant did not object to the information. If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity, and he may not raise the objection on appeal or in any other postconviction proceeding.").

**47.** *Id.* at 551 (concluding that "there is no doubt that the State intended to accuse appellant of indecency with a child," thus indictment sufficient).

**48.** *See* Tex. Const. Art. V, § 1; *see Davis v. State*, 956 S.W.2d 555, 557–59 (Tex.Crim.App. 1997) (discussing tendency to confuse jurisdiction of the court with authority of the judge). *See* Tex. Const. Art. V, § 8 (setting out jurisdiction of district courts); Tex.Code Crim. Proc. art. 4.05 ("District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code.").

**49.** Under section 38.05, the State must prove that the defendant (1) intended to hinder the arrest of the fugitive, and (2) knew the person was a fugitive. To raise to offense from a misdemeanor to a felony, the State must prove that the defendant (1) intended to hinder the arrest of a *felony* fugitive, and (2)

viously upheld the validity of the indictment in several cases, including *Studer* itself, in which the *mens rea* allegation was missing or defective.[50] In this case, the indictment, as a whole, was sufficient to vest the district court with subject-matter jurisdiction and give the defendant notice that the State intended to prosecute him for a felony offense. It alleged whom appellant was hiding (Brown); it stated the offense Brown was hiding from (a felony); it alleged that appellant told police that Brown was not present. Because Brown was alleged to be a fugitive "for the offense of Failure to Comply with Registration as a Sex Offender" which is a felony, the district court could conclude, from the face of the charging instrument, that the State intended to charge a felony hindering apprehension offense. It certainly was a defective indictment because it omitted one of the two elements that raise hindering apprehension from a misdemeanor to a felony, but it was nonetheless sufficient to vest jurisdiction—it charged "an offense" and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense. If appellant was confused about

whether the State did or intended to charge him with a felony, he could have and should have objected to the defective indictment before the date of trial.[51]

Appellant did not object to the substance of the indictment until right *after* the jury had been empaneled. His failure to make a timely objection before the date of trial was exactly the type of action that the citizens of Texas summarily rejected in voting for the 1985 constitutional amendment and the Texas Legislature prohibited in enacting the 1985 enabling statutes.[52] Appellant forfeited any right to object to indictment defects thereafter, and the court of appeals should not have *sua sponte* reversed appellant's conviction on this basis. Therefore, we vacate the judgment of the court of appeals and remand the case to that court to address appellant's original complaints of legal and factual sufficiency and jury charge error.

KELLER, P.J., filed a concurring opinion in which WOMACK and HERVEY, JJ., joined.

JOHNSON, J., concurred.

knew the person was a *felony* fugitive. Tex. Penal Code § 38.05(c).

**50.** *See, e.g., State v. Oliver*, 808 S.W.2d 492, 493–94 (Tex.Crim.App.1991) (indictment that failed to allege culpable mental state in possession of controlled substance case is still an "indictment" conferring jurisdiction); *Rodriguez v. State*, 799 S.W.2d 301, 302–03 (Tex.Crim.App.1990) (indictment did not allege that appellant intentionally attempted to evade arrest; defect waived because defendant did not object before trial); *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990) (indictment failed to set out the acts constituting the *mens rea* element of recklessness).

**51.** Appellant was indicted on August 12, 2004, and trial did not occur until March 23, 2005, over seven months later. Appellant said nothing about the sufficiency of the indictment during those seven months. Because this indictment was presented to a district court

with felony jurisdiction, it is logical to assume that appellant prepared for a *felony* trial in district court, not a misdemeanor trial in county court.

**52.** *See* Brian A. Kilpatrick, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after Studer v. State and the 1985 Constitutional and Statutory Amendments?*, 44 Baylor L.Rev. 345, 348 (1992) (stating that "[t]he existence of the fundamental defect doctrine was problematic because it encouraged "sandbagging" techniques by defendants. In other words, when the defendant's counsel discovered a fundamental defect in the charging instrument, withholding such information was usually in the defendant's best interest. Only upon losing the trial would the defect be brought to the appellate court's attention.").

KELLER, P.J., concurring in which WOMACK, and HERVEY, JJ., joined.

Article 1.14 provides that a defendant forfeits appellate review if he "does not object to a defect, error, or irregularity of form or substance in an indictment ... before the date on which the trial on the merits commences."[1] The statute essentially dictates a three-step process for reviewing appellate complaints relating to indictments: (1) Is there an indictment? (2) If so, is the indictment defective, erroneous, or irregular in some respect? (3) If so, did the defendant lodge a timely objection to the defect, error, or irregularity? The Court treats the issue before us as a step (1) inquiry, but I believe that the pivotal issue is actually a step (2) inquiry.

### 1. Is there an indictment?

According to the Texas Constitution, an indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense."[2] In *Cook v. State*, we held that this language literally required a "person" to be named as the perpetrator in the written instrument in order for that instrument to qualify as an indictment.[3] In *Duron v. State*, we addressed the requirement that an indictment charge an "offense."[4] We held that an "offense" is charged if the written instrument "accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute."[5] If the written instrument purporting to be an indictment does not in fact qualify as an "indictment," then the defendant is exempted from the usual require-

ment that he object to defects in the indictment before the date of trial.[6]

*Duron's* standard for determining when an "offense" is alleged can be understood through the following example. Suppose the purported indictment alleged only the name of the perpetrator and a culpable mental state: *e.g.* "John Smith intentionally." Any number of criminal offenses could contain those allegations. Under *Duron,* this simply would not be enough information to allege an offense.

But even under appellant's reasoning, the indictment in the present case alleges an offense: it at *least* alleges the *misdemeanor* offense of hindering apprehension.[7] That is an offense that is insufficient to invoke the district court's jurisdiction, but it is an offense nonetheless. The State, of course, contends that the indictment alleges more than that, charging the felony offense of hindering apprehension. But the fact that an offense of some sort is alleged is not in dispute. Therefore, under the Texas constitution, the written instrument in this case is, indisputably, an indictment.

### 2. Is the indictment defective?

The real question in this case is what kind of offense is being charged in the indictment? That question brings us to step (2) of the inquiry, whether the indictment is defective, erroneous, or irregular. Even when an indictment is error-free, a defendant can raise a claim that he was convicted of an offense that was not authorized by the facially complete indict-

---

1. Tex.Code Crim. Proc., Art. 1.14(b).

2. Tex. Const., Art. V, § 12(b).

3. 902 S.W.2d 471, 480 (Tex.Crim.App.1995).

4. 956 S.W.2d 547, 551 (Tex.Crim.App.1997).

5. *Id.*

6. *Id.* at 550 (citing *Cook,* 902 S.W.2d at 478).

7. *See* Tex. Pen.Code § 38.05(a), (c).

ment.[8] Under those circumstances, the defendant can argue persuasively that the indictment was not defective, and thus, there was nothing to object to prior to trial. In that situation, there is no *indictment* error; rather, there is error in charging the jury or in rendering judgment on an offense that the indictment does not authorize. If, for example, an indictment contains allegations necessary to establish the offense of robbery but contains no additional allegations that would suggest the greater offense of aggravated robbery,[9] then there may be no error in the indictment but error would occur at trial if the prosecution were permitted to pursue an aggravated robbery conviction. A defendant must preserve such a complaint by objecting at trial.[10]

In appellant's case, however, we are not confronted with a facially complete indictment alleging the misdemeanor offense of hindering apprehension. The misdemeanor offense of hindering apprehension does not require proof that the fugitive committed a felony offense, but the felony offense of hindering apprehension does.[11] The indictment in this case contains an additional allegation that suggests the greater offense of felony hindering apprehension: that the harbored fugitive was wanted for the offense of "failure to comply with reg-

istration as a sex offender," which is a felony offense. Consequently, we have an incomplete indictment alleging the felony offense of hindering apprehension, so the indictment was defective, and appellant was required by statute to lodge a pretrial objection to preserve error on appeal.[12]

I concur in the Court's judgment.

8. *Sutton v. State,* 899 S.W.2d 682, 686 (Tex. Crim.App.1995).

9. *Compare* TEX. PEN.CODE § 29.02 with § 29.03.

10. If the error is considered to be in the jury charge, then even without an objection, the error would be subject to the *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). "egregious harm" standard.

11. *See* § 38.05(a), (c).

12. *See Studer v. State,* 799 S.W.2d 263 (Tex. Crim.App.1990). I also believe that when the lesser and greater offenses straddle the misde-

meanor-felony divide, an indictment could be incomplete if it appears to allege only a misdemeanor but was filed in district court, and the misdemeanor is not one of those few that are sufficient to invoke the district court's jurisdiction. Under those circumstances, the State's filing of the indictment in district court evidences its intent to prosecute a felony offense, and a felony offense exists to which the allegations in the indictment might reasonably pertain. Of course, where a misdemeanor is not related to any felony offense for which a district court would have jurisdiction, such as in the "speeding" example given by the Court, then an indictment alleging such an offense would not be capable of conferring such jurisdiction.