Deondre Javqueen **JENKINS**, Appellant

v.

The **STATE** of Texas, Appellee

No. 04-17-00114-CR

Court of Appeals of Texas, San Antonio.

Delivered and Filed: December 20, 2017

Debra L. Parker, San Antonio, TX, for Appellant.

Laura E. Durbin, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: Karen Angelini, Justice, Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Karen Angelini, Justice

In this appeal, we are presented with this issue: does a charging instrument that does not identify the defendant by name, but which is preceded by a caption that does identify the defendant by name, meet the jurisdictional requirement that a charging instrument name a "person" as set forth in article V, § 12(b) of the Texas Constitution? Because we conclude that it does not, we hold that the charging instrument in this case did not vest the trial court with jurisdiction. Therefore, Appellant Deondre Javqueen Jenkins's conviction is void.

### BACKGROUND

In September 2014, Deondre Javqueen Jenkins was charged with one count of continuous trafficking of persons:

Defendant: DEONDRE J JENKINS
JN #: 1573311-1
CLERK'S ORIGINAL

Address: 2469N N 37TH ST, MILWAUKEE, WI 53210-3045

Complainant: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

CoDefendants:
                    581184
Offense Code/Charge: Continuous Trafficking of Persons—25-Life

G.J: 5/2027        PH Court:
Court #: 186        SID #:1008391      Cause #: 2014 CR 8396
Witness: State's Attorney

FILED
_____ O'CLOCK _____ M
OCT 0 8 2014
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY, TEXAS
BY_____
DEPUTY

---

## TRUE BILL OF INDICTMENT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empanelled and sworn as such at the September term, A.D., 2014, of the *186* Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment:

Count I

on or about the 15th day of February, 2012, through the 15th day of December, 2013, a period of thirty days or more in duration, in Bexar County, Texas, the defendant engaged two or more times in conduct that constitutes an offense under Section 20A.02—Trafficking of Persons against ▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓; in that

1. The defendant knowingly trafficked ▓▓▓▓▓▓▓ and through force, fraud or coercion, caused ▓▓▓▓▓▓▓ to engage in conduct prohibited by Section 43.02—Prostitution; and

2. The defendant knowingly received a benefit from participating in a venture that involved trafficking ▓▓▓▓▓ and through force, fraud and coercion caused her to engage in conduct prohibited by Section 43.02—Prostitution; and

3. The defendant knowingly trafficked ▓▓▓▓▓▓▓, a child, and by any means caused ▓▓▓▓▓▓▓ to engage in or become the victim of conduct prohibited by Section 43.05—Compelling Prostitution; and

4. The defendant knowingly received a benefit from participating in a venture that involved trafficking ▓▓▓▓▓, a child, and by any means caused ▓▓▓▓▓▓▓ to engage in or become the victim of conduct prohibited by Section 43.05—Compelling Prostitution;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Foreman of the Grand Jury

## INDICTMENT – CLERK'S ORIGINAL

After a jury trial, Jenkins was found guilty and sentenced to twenty-five years of imprisonment. On appeal, he argues the trial court did not have jurisdiction over his case because the charging instrument was fatally defective. According to Jenkins, the charging instrument failed to conform to the Texas Constitution's definition of an indictment because it did not name "a person." Jenkins did not move to quash or dismiss the indictment before trial commenced. On the second day of trial, Jenkins argued that the charging instrument was fatally defective under the Texas Constitution because it did not charge "a person." Jenkins's motion to dismiss the case was denied by the trial court. Jenkins appeals.

## STANDARD OF REVIEW

■ The sufficiency of an indictment is a question of law and is reviewed *de novo*. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

## DISCUSSION

■ The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses. *See* TEX. CONST. art. 1, § 10 (providing that in all criminal prosecutions the accused "shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof" and that in felony cases, "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury"). "An indictment serves two functions." *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995). "First, it provides notice of the offense in order to allow a defendant to prepare a defense." *Id.* "Second, an indictment serves a jurisdictional function." *Id.* "The filing of an indictment is essential to vest the trial court with jurisdiction over a felony offense." *Id.* Article V, section 12(b) of the Texas Constitution provides that jurisdiction vests only upon the filing of a valid indictment:

> An indictment is a written instrument presented to a court by a grand jury *charging a person* with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

TEX. CONST. art. V, § 12(b) (emphasis added); *see Cook*, 902 S.W.2d at 476. According to Jenkins, the charging instrument in this case does not comply with article V, § 12(b) of the Texas Constitution because it does not charge "a person." He argues that it is therefore not an indictment pursuant to the Texas Constitution and did not confer jurisdiction on the trial court. The State responds that Jenkins waived this defect pursuant to article 1.14 of the Texas Code of Criminal Procedure because he did not object to the defect before commencement of trial.

I. *History of Defective Charging Instruments*

A. *Defective Charging Instruments Before 1985*

Before 1985, the court of criminal appeals used "the terms 'substance defect,' 'fundamental error,' and 'fatally defective' interchangeably when addressing unpreserved errors in charging instruments that could be raised for the first time on appeal." *See Smith v. State*, 309 S.W.3d 10, 16 (Tex. Crim. App. 2010). The court "called substance defects 'fundamental error' because a charging instrument with a substance defect deprived the trial court of jurisdiction" and a "conviction based on such a charging instrument was void." *Id.* at 16-17; *see Gengnagel v. State*, 748 S.W.2d 227, 229 (Tex. Crim. App. 1988); *Ex parte Cannon*, 546 S.W.2d 266, 268 (Tex. Crim. App. 1976).

B. *1985 Constitutional Amendment and Reform Legislation*

In 1985, frustrated over the ability of a defendant to raise substantive defects in an indictment for the first time on appeal, the 69th Legislature proposed, and the voters approved, an amendment to article V, § 12 of the Texas Constitution. *Smith*, 309 S.W.3d at 17. "The amendment provid-

ed, for the first time, a constitutional definition of 'indictment' and 'information.'" *Id.*

> An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency and requisites, are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

TEX. CONST. art. V, § 12(b).

"As part of the same reform package, the legislature amended several provisions of the Code of Criminal Procedure to ensure that indictment defects could be objected to and repaired pretrial, but that these defects would not invalidate an otherwise valid conviction if not raised before trial." *Teal v. State*, 230 S.W.3d 172, 176 (Tex. Crim. App. 2007). Article 1.14 of the Code of Criminal Procedure was one of these provisions; the legislature added section (b):

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). The legislature also amended article 28.10 "to ensure that the State had ample opportunity to repair indictment defects and that the defendant received the requisite notice of indictment changes, as well as an opportunity to respond to them. *Teal*, 230 S.W.3d at 176; *see* TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006).

"The legislature's purpose in amending the constitution and the statutes was to change the focus from 'whether a defect is fundamental [*i.e.* a defect of substance or not]' to 'whether the defendant brought the defect to the court's attention.'" *Teal*, 230 S.W.3d at 177. "And the legislature intended the constitutional provision and statutes to work together." *Id.* "That is, indictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Id.* "The 1985 statutes clearly mandate that defendants must object to errors in the form or substance of an indictment 'before the date on which the trial on the merits commences.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 1.14(b)).

### C. Court of Criminal Appeals's Interpretation of Constitutional Amendment

In *Studer v. State*, 799 S.W.2d 263, 265 (Tex. Crim. App. 1990), the court of criminal appeals interpreted the above indictment reform legislation for the first time by addressing the second prong of the constitutional definition, namely, the requirement that a charging instrument charge the commission of an offense. The defendant had been charged by information with indecent exposure and complained for the first time on appeal that the information was fatally defective. *Id.* at 264. The defendant argued that "the information was defective for failing to 'allege,

with reasonable certainty, the act or acts relied upon to constitute recklessness.'" *Id.* at 265. The court of criminal appeals discussed the legislative history of the reform legislation and stated the following:

Clearly both the House and Senate believed that all defects in a charging instrument were waived if not raised by a defendant before trial. Clearly the perceived evil that they were correcting was the raising of indictment defects for the first time after a trial and conviction and the subsequent reversal of that conviction because of that defect.

*Id.* at 270-71. The court of criminal appeals explained that "the 1985 constitutional amendment made the specifics of an indictment or information statutory requirements, not constitutional requirements." *Teal*, 230 S.W.3d at 178 (discussing *Studer*, 799 S.W.2d at 272). "Thus, all substantive defects in indictments are waivable under the statutes and these defects do not render the indictment 'void.'" *Id.* (discussing *Studer*, 799 S.W.2d at 272).

"In the five years after *Studer*, [the court of criminal appeals] addressed the indictment defects and *Studer* related issues approximately thirty times." *Teal*, 230 S.W.3d at 178. "Those cases consistently reiterated the same proposition: 'In *Studer* ... [the court of criminal appeals] interpreted the amendments to art. V, § 12(b) and art. 1.14 and held a defect in a charging instrument is waived unless raised prior to trial.'" *Teal*, 230 S.W.3d at 178 (quoting *Ex parte Matthews*, 873 S.W.2d 40, 41 (Tex. Crim. App. 1994)).

However, the court of criminal appeals reversed this trend in *Cook v. State*, 902 S.W.2d 471, 474 (Tex. Crim. App. 1995), once again holding that a charging instrument "was so deficient as to not invest the trial court with jurisdiction." The court addressed whether an indictment was fatally flawed because the charging instru-

ment did not charge "a person." The charging instrument stated the following:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empaneled and sworn as such at the March term, A.D., 1991, of the 186th Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment, and on or about the .

1ST day of June 1987, hereinafter referred to as defendant, with intent to deprive the owner, namely: ELIZABETH K. PRICE, of property, namely: LAWFUL CURRENCY OF THE UNITED STATES OF AMERICA said property, said property being other than real property which had A VALUE of Twenty Thousand Dollars ($20,000.00) or more, without the effective consent of the owner;

Before the commission of the offense alleged above, on the 24th day of June, A.D., 1977, in Cause no. CR 3-77-35, in the UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AT DALLAS, the Defendant was convicted of the felony of FRAUD IN OFFER OF SALE OF SECURITIES AND MAIL FRAUD.

*Id.* The indictment stated that the "defendant" had committed an offense. "No person was alleged to have committed the offense." *Teal*, 230 S.W.3d at 178 (discussing *Cook*). In a later opinion, the court of criminal appeals noted that the defective indictment in *Cook* "was too much." *Id.* (discussing *Cook*).

In *Cook*, 902 S.W.2d at 477, the court explained that the 1985 constitutional amendment defined an indictment as "a written instrument presented to a court by

a grand jury charging a person with the commission of an offense." Thus, "to comprise an indictment within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense." *Id.* According to the court, "[i]t is clear, however, that if the charging instrument fails to charge a person, then it is not an indictment as required by art. V, § 12(b) and art. I, § 10." *Cook*, 902 S.W.2d at 477. "It was this premise, that the [c]onstitution expressly required that *a person* be charged with an offense, that led [the court of criminal appeals] to conclude that '[i]f the charging instrument fails to charge 'a person' then it is not an indictment and does not vest the trial court with jurisdiction.'" *Teal*, 230 S.W.3d at 179 (quoting *Cook*, 902 S.W.2d at 480) (alteration and emphasis in original); *see also Ex parte Patterson*, 902 S.W.2d 487, 487-88 (Tex. Crim. App. 1995) (holding indictment that charged "Defendant" with an offense did not charge *a person* with the commission of the offense, and therefore was not an indictment within the meaning of that term under article V, § 12(b) of the Texas Constitution).

The court of criminal appeals in *Cook* distinguished *Studer* and its progeny, explaining that "[w]hile art. V, § 12(b) was clearly intended to eliminate the requirement that an indictment charge every element of an offense, it is equally apparent that neither the Legislature nor the voters intended to abrogate the constitutional right to a charging instrument sufficient to constitute an indictment." *Cook*, 902 S.W.2d at 478. Thus, the court concluded "art. V, § 12(b) cannot be read to dispense with the necessity of filing an 'indictment' in the trial court in order to vest the court with jurisdiction and provide notice to the defendant." *Cook*, 902 S.W.2d at 478.

The court explained that in construing constitutional provisions, it was required to interpret the constitution "as a whole, rather than piecemeal." *Id.* It noted art. V, § 12(b) and art. I, § 10 of the Texas Constitution "address similar subjects" and must be interpreted "to give effect to both unless they are irreconcilable." *Cook*, 902 S.W.2d at 478. The court concluded the two constitutional provisions were "complementary rather than conflicting." *Id.* "Art. V, § 12(b) should be read in context to art. I, § 10: the latter established the right to an indictment, and the former establishes the constitutional definition for what constitutes an indictment." *Cook*, 902 S.W.2d at 478. The court reasoned that "[a]lthough art. V, § 12(b) subsequently authorizes the Legislature to prescribe the requisites and sufficiency of indictments," the court did "not read the grant of authority so broadly as to authorize the Legislature to prescribe rules which undermine the constitutional definition of an indictment because this would render art. V, § 12(b) internally inconsistent." *Cook*, 902 S.W.2d at 478. According to the court, "[s]ince the language used (in a constitutional provision) must be presumed to have been carefully selected, [it did] not believe the Legislature would provide a constitutional definition of an indictment and then subsequently authorize itself to prescribe statutory rules which undermine that definition." *Id.* (citation omitted).

The court of criminal appeals further reasoned that "a construction of art. V, § 12(b) which places the constitutional definition of an indictment within the purview of art. 1.14(b) [of the Texas Code of Criminal Procedure] is problematic because it subjects a constitutional provision to statutory authority." *Cook*, 902 S.W.2d at 478. The court emphasized that "[i]t is fundamental to constitutional and statutory construction that the Legislature lacks the

authority to enact a statute which conflicts with a provision of the constitution." *Id.* at 478-79.

Finally, the court of criminal appeals in *Cook* explained that it did "not believe a reasonable construction of art. V, § 12(b) permits the conclusion that the constitutional definition of an indictment falls within the purview of art. 1.14(b) [of the Texas Code of Criminal Procedure] because this construction clearly leads to an absurd result." *Cook*, 902 S.W.2d at 479. The court reasoned that "[i]f art. V, § 12(b) subjects *all* requisites of an indictment to the scope of art. 1.14(b), and hence, to waiver, then [it could] conceive of no point at which a charging instrument is so deficient as to *not* constitute an indictment." *Cook*, 902 S.W.2d at 479 (emphasis in original). "Clearly, this construction of art. V, § 12(b) would permit a blank sheet of paper to suffice for a valid indictment." *Cook*, 902 S.W.2d at 479.

Therefore, the court held "that the definition of an indictment provided by art. V, § 12(b) does not authorize the Legislature to statutorily change these fundamental requirements." *Cook*, 902 S.W.2d at 479. "Accordingly, to constitute an indictment as required by art. I, § 10 and art. V, § 12(b), a charging instrument must at least charge '*a person*,' with the commission of an offense." *Cook*, 902 S.W.2d at 479-80 (emphasis in original). "If the charging instrument fails to charge 'a person' then it is not an indictment and does not vest the trial court with jurisdiction." *Id.* at 480. Furthermore, the court held that "because a valid indictment is essential for jurisdiction, it is not subject to waiver." *Id.*

In a later opinion, *Teal v. State*, the court of criminal appeals noted that "*Studer* and *Cook* are 'book-end' cases." *Teal*, 230 S.W.3d at 179. "*Studer* held that the defendant must object to any indictment defects before the date of trial or forfeit any complaint about its sufficiency thereafter." *Teal*, 230 S.W.3d at 179. "*Cook* held that the Texas Constitution requires that an indictment allege that (1) a person, (2) committed an offense." *Teal*, 230 S.W.3d at 179. "Without both of those elements the charging instrument is not an indictment and does not vest the district court with jurisdiction." *Id.*

The court of criminal appeals explained that in considering whether an indictment meets both of these elements, courts "look to the indictment as a whole, not to its specific formal requisites." *Id.* at 180. "Constitutionally, district courts have jurisdiction over a felony when an indictment charging a person with an offense is signed by the grand jury foreman and presented to the district court." *Id.* at 180-81. "Thus, the complete test for the constitutional sufficiency of a particular charging instrument goes slightly further than that expressly set out in *Studer* and *Cook*: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction?" *Teal*, 230 S.W.3d at 181. "Suppose, for example, that a named person is indicted for the offense of speeding." *Id.* "The constitutional requirements of an indictment are met—a named person and an offense—but the district courts do not have subject-matter jurisdiction over speeding offenses, regardless of how 'perfect' the wording of the charging instrument might be." *Id.* "Thus, the indictment despite whatever substantive defects it contains, must be capable of being construed as intending to charge a felony (or a misdemeanor for which the district court has jurisdiction)." *Id.*; *see Duron v. State*, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997) ("[A] written instrument is an indictment or information under the constitution

if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective.").

The *Teal* Court followed *Studer* and its progeny by holding that an indictment missing some elements of an offense was not constitutionally defective. *Teal*, 230 S.W.3d at 181. The court noted "the element that was missing in this indictment was whether appellant knew that Brown was a felony fugitive," which was "one of the two *mens rea* requirements for Hindering Apprehension." *Id.* The *Teal* Court relied on the fact it had "previously upheld the validity of the indictment in several cases, including *Studer* itself, in which the *mens rea* allegation was missing or defective." *Teal*, 230 S.W.3d at 181-82. In looking at "the indictment, as a whole," the court concluded it was sufficient to vest the trial court with jurisdiction and "give the defendant notice that the State intended to prosecute him for a felony offense." *Id.* at 182. The court explained its holding:

It certainly was a defective indictment because it omitted one of the two elements that raise hindering apprehension from a misdemeanor to a felony, but it was nonetheless sufficient to vest jurisdiction—it charged "an offense" and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense. If appellant was confused about whether the State did or intended to charge him with a felony, he could have and should have objected to the defective indictment before the date of trial.

*Id.*

■ Thus, in looking at precedent by the court of criminal appeals, we conclude the court of criminal appeals has interpreted the second prong of article V, § 12(b)'s constitutional definition of indictment lib-

erally. A charging instrument can be missing elements of an offense and still be an "indictment" for purposes of the Texas Constitution. *See Teal*, 230 S.W.3d at 182; *Studer*, 799 S.W.2d at 273. However, when it comes to the first prong of article V, § 12(b)'s constitutional definition, the court of criminal appeals has strictly held that a charging instrument must name a person to vest a trial court with jurisdiction. *See Cook*, 902 S.W.2d at 480.

II. *Did the charging instrument in this case charge "a person" with an offense?*

■ Article 21.02 of the Texas Code of Criminal Procedure names the procedural requisites of an indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 21.02 (West 2009). Two of these requisites are that the indictment "shall commence, 'In the name and by authority of The State of Texas'" and "must conclude, 'Against the peace and dignity of the State.'" *Id.* In reviewing the charging instrument in this case, Jenkins's name does not appear after the commencement of the indictment and does not appear before the conclusion. The only place Jenkins's name appears is in the caption.

In their hornbook series *Texas Practice: Criminal Practice and Procedure*, respected legal commentators George E. Dix and John M. Schmolesky explain what the "caption" is in a charging instrument. *See* 42 George E. Dix et al., TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 25.24 (2011). "What is regarded as the 'caption' in a charging instrument has undergone considerable evolution." *Id.* "In English practice, the 'caption' was the clerk's insertion on an indictment of the procedural history of the proceedings in the case when an indictment was called up for trial in a higher court or for review." *Id.* "American practice involved no such procedure for calling charging instruments to a

different court for trial, so no caption in this sense was required." *Id.* "Local practices, however, often involve the insertion on the document constituting a charging instrument of considerable information generally because this collection of information is useful to court personnel in processing the case." *Id.* "This information may include not only the accused's name but also his address, age, race, and date of birth, the number assigned to the case by the clerk, the court in which the case is to be processed, and perhaps even other information such as whether bail has been set and, if so, in what amount." *Id.* "It may also include a notation as to the name of the offense charged and perhaps the date on which the instrument subsequently alleges the offense was committed." *Id.* "This information appears before the commencement and is often separated from that part of the document beginning with the commencement by a line or similar mark." *Id.* "Under some local practices, the forms used for charging instruments have blanks for much of this information." *Id.* "This information is what has come to be known as the caption." *Id.* "Although it is part of the document that also contains the charging instrument, *it is not part of the charging instrument.*" *Id.* (emphasis added).

Indeed, in 1935, the court of criminal appeals in *Stansbury v. State,* 128 Tex. Crim. 570, 574, 82 S.W.2d 962, 964 (1935), explained that a caption is not part of an indictment. In *Stansbury,* the appellant argued that "the indictment failed to show that it was returned by the grand jury of McCulloch County." In overruling the appellant's point of error, the court of criminal appeals explained that the "defect is found in the caption" and that "the caption is really no part of the indictment proper." *Id.*

Further, courts of appeals have relied on *Stansbury* for the proposition that a caption is not part of the indictment. In *Thibodeaux v. State,* 628 S.W.2d 485, 487 (Tex. App.—Texarkana 1982, no pet.), the appellant argued that "the information was fundamentally defective, and that there was a fatal variance between the information and the proof." "The basis for these contentions [was] that the caption of the Information described the offense as Carrying A Prohibited Weapon, a different offense from that of Unlawfully Carrying A Weapon, and that the evidence showed only the latter offense, if any." *Id.* The court noted that "the body of the Information itself, which appears below and separate from the caption, contained all of the requisites of an Indictment or Information under the law of Texas, including the proper beginning and ending, and in that portion the offense was clearly charged that appellant 'did unlawfully, knowingly and intentionally carry about his person an illegal knife, to-wit: a knife with a blade over five and one-half inches.'" *Id.* Relying on *Stansbury,* the court of appeals emphasized that the "caption constitutes no part of an Indictment or Information, and any error contained therein will be considered harmless surplusage unless a showing of prejudice is made." *Thibodeaux,* 628 S.W.2d at 487. According to the court, the "Information correctly charged the offense of unlawfully carrying a weapon, and there was no variance between the allegations and the proof." *Id.* at 488.

Similarly, the Corpus Christi Court of Appeals in *Gonzalez v. State* considered whether an indictment was fundamentally defective because it "failed to commence with the words, 'In the name of and by authority of the State of Texas.'" 664 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1984), *remanded for reconsideration on other grounds.* The appellant's argument stemmed "from the fact that,

above the required statutory preface on the indictment and separated therefrom by a double printed line, there appeared a caption and other identifying information which was then followed by the proper preface of 'In the name of and by the authority of the State of Texas.'" *Id.* According to the court, "[i]t is firmly established that captions and other identifying information such as these are not part of the indictment." *Id.* For support, the court cited *Stansbury* and *Thibodeaux. Gonzalez*, 664 S.W.2d at 799; *see also Garza v. State*, 653 S.W.2d 850, 854 (Tex. App.—Corpus Christi 1982, no pet.) (stating that "[i]t is firmly established that captions and identifying information such as these are not part of the indictment").

Likewise, the Austin Court of Appeals in *Adams v. State*, 222 S.W.3d 37, 52 (Tex. App.—Austin 2007, pet. ref'd), relied on *Stansbury* and addressed whether a charging instrument constituted an indictment under the Texas Constitution. During trial, the "trial court inquired as to which statutory provision the State was relying for conviction, either article 62.10 of the Code of Criminal Procedure or chapter 841 of the Health and Safety Code." *Adams*, 222 S.W.3d at 52. "The prosecutor responded that he was not prepared to answer the question." *Id.* "Subsequently, the prosecutor suggested a 'cut and paste' mistake in the caption to the indictment as to '62.10' and told the court the State was proceeding under '841.'" *Id.* The appellant argued that "if the trial court and the prosecutor were not sure which penal provision was being used, the charging instrument was a nonindictment under article V, section 12." *Id.* The Austin Court of Appeals disagreed: "The caption of the indictment does refer to 'Failure to Register as a Sex Offender' but *the caption is not part of the indictment.*" *Id.* (emphasis added). The court cited *Stans-*

*bury* and *Thibodeaux* for support of this proposition.

At oral argument, the State argued the court of criminal appeals was moving away from *Cook* and back to holding that defective indictments are waivable unless objected to before trial. The State claimed that in looking at the indictment as a whole, it was clear that the State intended to charge Jenkins. For support, the State cited *Kirkpatrick v. State*, 279 S.W.3d 324 (Tex. Crim. App. 2009), whether the court of criminal appeals considered whether the indictments vested the district court with jurisdiction. In *Kirkpatrick*, the defendant was charged in one indictment with "forgery and tampering with a governmental record in three counts." *Id.* at 324-25. In another indictment, a single count charged the defendant with tampering with a governmental record by making a document, specifically a letter attached to a motion for continuance, with knowledge of its falsity and with intent that it be taken as a genuine governmental record. *Id.* at 325. On appeal, the defendant argued that the trial court did not have jurisdiction because the defendant had been indicted for a misdemeanor in each of these two indictments. *Id.*

The court of criminal appeals explained that "although the indictment properly charged a misdemeanor and lacked an element necessary to charge a felony, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the charging of the felony offense was intended." *Id.* at 329. The court continued, "Further, the face of each indictment contains a heading: 'Indictment—Tampering with a Governmental Record 3rd Degree Felony,—Tex. Penal Code Ann. § 37.10(a)-Code 73990275.'" *Kirkpatrick*, 279 S.W.3d at 329. According to the court, the "Penal Code section was easily ascertainable, and the notation that the

offense was a third-degree felony clearly indicated that the State intended to charge a felony offense and that the district court had subject-matter jurisdiction." *Id.* Thus, the court concluded the appellant "had adequate notice that she was charged with a felony." *Id.* "If she had confusion about whether the State did, or intended to, charge her with a felony, she could have, and should have, objected to the defective indictment before the date of trial." *Id.*; *see also Brooks v. State,* 382 S.W.3d 601, 607 (Tex. App.—Amarillo 2012, pet. ref'd) (relying on *Kirkpatrick* in considering whether indictments were defective when they purported to charge felonies but, on their face, alleged misdemeanor offenses).

We find *Kirkpatrick* distinguishable from the indictment in this case. The court in *Kirkpatrick* was considering the second prong of the constitutional definition, whether the indictment sufficiently alleged an offense. As explained previously, the court of criminal appeals has consistently interpreted this requirement more liberally than the first prong of the constitutional definition of indictment. Additionally, with regard to the court's discussion of a heading or caption, the court was considering whether the defendant had adequate notice. It was not considering whether a person was named in the indictment. Thus, we conclude that the court of criminal appeals's holding in *Cook* controls the outcome of this case.

### CONCLUSION

Because the charging instrument in this case failed to charge "a person" with an offense, it did not meet the first prong of the constitutional definition of an indictment under article V, § 12(b) of the Texas Constitution. Because the indictment failed "to at least charge 'a person'" with the commission of a crime, it is not an indictment and did not vest the trial court with jurisdiction. *Cook,* 902 S.W.2d at 480. And, "because a valid indictment is essential for jurisdiction, it is not subject to waiver." *Id.* Therefore, Jenkins did not waive error, and his conviction is void.

The judgment of the trial court is reversed, and this cause is remanded to the trial court with instructions to dismiss the indictment. *See id.*