In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00184-CR


______________________________




GENE EVERETT MOORE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 36,389-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Gene Everett Moore, seventy-four years old at the time of trial, was charged with two counts
of aggravated sexual assault and was released on his bond of $100,000.00. Moore then entered a
plea of guilty and elected to have a jury assess his punishment. (1)

 In the midst of the punishment hearing, at the close of the morning's testimony, and after the
jury had been recessed for the day, the court stated that it had a concern about the sufficiency of the
$100,000.00 bond (the amount of which had been set by a different magistrate) that had been posted
at the time of Moore's arrest, about nine months before trial. The court noted that even though
Moore was not disqualified from receiving community supervision, he was faced with the real
prospect of long-term incarceration. Further, during the morning's testimony, it was shown that
when Moore had been arrested, he had his clothes and money packed, giving the appearance that he
was intending to leave. The court then acknowledged that Moore had not failed to appear each time
he was required to be in court and asked for comment from counsel concerning the adequacy of the
existing bond. After hearing counsels' arguments (during which Moore's counsel objected to an
increase in the bond by noting that Moore's past conduct did not suggest that the bond was
insufficient to assure his attendance at court and that it would make it difficult for counsel to
complete his trial preparation with his witnesses for the next day without Moore's assistance), the
court raised Moore's appearance bond to $500,000.00. The punishment hearing resumed the next
morning.

 In his sole point of error on appeal, Moore argues that the decision by the trial court to raise
the bond in mid-trial was "not a reasoned, decision but a gag reflex." 

 Moore correctly observes that the rules governing the setting of the amount of bond for a
defendant are set out in Article 17.15 of the Texas Code of Criminal Procedure:

 The amount of bail to be required in any case is to be regulated by the court,
judge, magistrate or officer taking the bail; they are to be governed in the exercise of
this discretion by the Constitution and by the following rules:


 (1) The bail shall be sufficiently high to give reasonable assurance that
the undertaking will be complied with. 

 

 (2) The power to require bail is not to be so used as to make it an
instrument of oppression. 

 

 (3) The nature of the offense and the circumstances under which it was
committed are to be considered. 

 

 (4) The ability to make bail is to be regarded, and proof may be taken
upon this point. 

 

 (5) The future safety of a victim of the alleged offense and the community
shall be considered. 


Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005).


 Moore is also correct in pointing out that factors to be considered in applying these rules
include (1) the length of the potential sentence which might be received, (2) the nature of the offense
with which the defendant has been charged, (3) the defendant's work record, family ties, and length
of residency, (4) the conformity by the defendant with previous bond conditions, (5) the amount of
other outstanding bonds, and (6) aggravating factors involved in the offense. Ex parte Rubac, 611
S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981). 

 In this case, the trial court apparently was strongly swayed by the evidence presented during
the half day of trial. The only evidence that this seventy-four-year-old man might abscond was the
testimony that before he was originally arrested (some nine months before trial commenced), he had
his clothes packed and his money ($660.00) readily available as if for flight. It was upon this
testimony (and, perhaps, the general drift of the testimony at trial which might have given some
indication of what kind of sentence might have been expected to be meted out by the jury) that the
trial court indicated led it to believe that Moore might now, on the eve of sentencing, attempt to
vanish. 

 There is no precise standard for appellate review of bond settings. Ex parte Pemberton, 577
S.W.2d 266, 267 (Tex. Crim. App. [Panel Op.] 1979); In re Hulin, 31 S.W.3d 754, 758 (Tex.
App.--Houston [1st Dist.] 2000, orig. proceeding). The fact that the existing bond had proven
entirely adequate up to the last day of the trial provides a strong suggestion that it would remain so. 
However, the court did verbalize its concern and explained reason for that newly developed concern
that Moore (who had the immediacy of a potential lengthy sentence looming overhead) might now
be a flight risk where he had not been one previously. There is authority for a trial court to alter the
terms of release under bond. See Tex. Code Crim. Proc. Ann. art. 17.09, § 3 (Vernon Supp. 2008)
(providing that if the trial judge or magistrate "finds that the bond is defective, excessive or
insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and
sufficient cause, such judge or magistrate may . . . require the accused to give another bond in such
amount as the judge or magistrate may deem proper"); see also Tex. Code Crim. Proc. Ann.
art. 17.15 (setting forth rules for fixing amount of bail); Martin v. State, 176 S.W.3d 887, 904-05
(Tex. App.--Fort Worth 2005, no pet.); Hulin, 31 S.W.3d at 760 (indicating likelihood of lengthy
prison sentence is factor to be considered in determining amount of pretrial bond sufficient to secure
presence of accused at trial). But see Meador v. State, 780 S.W.2d 836, 837 (Tex. App.--Houston
[14th Dist.] 1989, no pet.) (holding trial court abused discretion by revoking appellant's bond of
$100,000.00 and increasing amount of bond required to $200,000.00 because appellant was three
to five minutes late to court and appeared without his attorney). In this kind of ruling, we do not
look to determine if the action of the trial court is what we would have done under the same
circumstances but, rather, whether the trial court abused its discretion.

 However, in this matter, it is not necessary for us to determine the question of whether the
order raising the bond was an abuse of judicial discretion. We fail to see how the actions of the trial
court affected this trial. Although there were statements by Moore's attorney concerning some
difficulties that Moore's incarceration for the remainder of the day might pose in trial preparation,
there was no evidence presented concerning this issue. Even viewing it retrospectively, although the
incarceration brought about by raising of the bond created inconvenience and consternation, there
is nothing to show that Moore's defense was substantially harmed by this course of action. Under
the circumstances, Moore simply began his permanent incarceration a day earlier than he would have
otherwise. Having been convicted of the crime with which he was charged, he would have been
incarcerated from the time the jury returned its verdict of imprisonment. From that time forward,
Moore was no longer incarcerated under bond awaiting trial; the bond set by the trial court is no
longer in effect. Accordingly, the issues of whether the trial court should have had his bond kept at
the same pretrial level and whether it was an abuse of discretion to have raised it five-fold during
the trial are moot. 

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: March 19, 2009

Date Decided: March 20, 2009


Do Not Publish

1. Assessing punishment is precisely what the jury did, assessing it at life imprisonment. 


3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00232-CR

                                                ______________________________

 

 

                     REGENA NELL ECHOLS GALLAGHAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22083

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Regena
Nell Echols Gallaghan[1]
appeals the revocation of her community supervision for the underlying offense
of forgery of a financial instrument, repeat offender, and resulting sentence
of six years imprisonment.  The States
motion to revoke community supervision alleged that Gallaghan acquire[d] or
otherwise exercise[d] control over, property, to-wit:  electronics, of the value of less than $1,500,
from Josh Benedict, representative of Wal-Mart, the owner thereof, without the
effective consent of the owner, and failed to pay court costs, community
supervision fees, Crimestoppers program fee, attorneys fees, a $500.00 fine,
and restitution pursuant to her conditions of community supervision.  

            Gallaghan
complains that the indictment for the underlying forgery conviction was fundamentally
defective because the indictment was for writing forged checks to McCoys
Lumber but the checks were apparently to Cavenders.  Thus, Gallaghan asserts the position that she
was, therefore, tried for a crime for which she was not indicted, and the
conviction is, therefore, void. 
Gallaghan further asserts that the evidence is insufficient to prove
that she stole from Wal-Mart (an act which would be a violation of one of the
conditions of her community supervision). 
Finally, Gallaghan maintains that even if the evidence showed that she
failed to pay the court costs, community supervision fees, Crimestoppers
program fee, attorneys fees, a $500.00 fine, and restitution, there was
insufficient evidence to demonstrate that she had the ability to pay those
funds.  

I.          The Underlying Forgery
Indictment Was Not Fundamentally Defective 

            In
this case, count two[2]
of the indictment alleged Gallaghan pass[ed] to Brian Prichard, as a representative
of McCoys Lumber Company, a forged writing knowing such writing to be forged,
and such writing had been so made that it purported to be the act of Sammy
Carroll or Oletha Davis, who did not authorize the act.  Again, the indictment included copies of the
checks.  However, the checks were made
out to Cavenders instead of McCoys Lumber and contained the allegedly forged
signature of Osterbuhr, not Carroll or Davis, as stated in the written count.  Pursuant to a plea bargain, Gallaghan pled
guilty to the indictment.  The trial
courts judgment listed Cavenders Boot City as the victim of the offense. 

            Gallaghan
cites to several cases in her brief for the proposition that she may complain
on appeal from a community supervision revocation proceeding that the
underlying indictment was fundamentally defective.[3]  These cited cases are from a time when
failure to object to a defect of substance did not waive error on appeal; [t]he
reasoning was that an indictment that contained a substantive defect was void
and therefore insufficient to invoke the jurisdiction of the court.  Teal v.
State, 230 S.W.3d 172, 175 (Tex. Crim. App. 2007).  This is no longer the law.  Id.  A charge is fundamentally defective if it
authorizes a conviction on a set of facts that do not constitute an
offense.  Zuckerman v. State, 591 S.W.2d 495, 496 (Tex. Crim. App. [Panel
Op.] 1979).  The proper test to
determine if a charging instrument alleges an offense is whether the
allegations in it are clear enough that one can identify the offense
alleged.  If they are, then the
indictment is sufficient to confer subject matter jurisdiction.  Teal,
230 S.W.3d at 180. 

            Gallaghan
does not complain that the indictment failed to allege the offense of
forgery.  Instead, she complains that the
indictment set forth a different forgerythat of Carroll or Davis instead of
Osterbuhr.  

            Thus,
Gallaghans complaint is one covered by Article 1.14 of the Texas Code of
Criminal Procedure. 

If the defendant does not object to a defect,
error, or irregularity of form or substance in an indictment or information
before the date on which the trial on the merits commences, he waives and
forfeits the right to object to the defect, error, or irregularity and he may
not raise the objection on appeal or in any other postconviction proceeding.

 

Tex.
Code Crim. Proc. Ann. art. 1.14(b) (West 2005).  Because Gallaghan failed to object to the
defect in the underlying proceeding, her argument has been waived.  Teal,
230 S.W.3d at 178 ([A]ll substantive defects in indictments are waiveable
under the statutes and these defects do not render the indictment
void.).  Moreover, Teal instructs us to look at the
indictment as a whole, not to its specific formal requisites.  Id. at
180.  Because the indictment incorporated
the checks (which contained the proper victim of the offense and the correct
name of the signature forged), Gallaghans argument that she was convicted for
committing an offense against a different person from the complaint in the
offense on trial, must fail. 

            We
overrule this point of error.  

II.        Trial Court Did Not
Abuse Its Discretion in Revoking Community Supervision

            Next,
Gallaghan complains that the evidence was insufficient to prove that she
violated her community supervision by committing another offense.  

            A.        Standard of Review 

            We
will review the trial courts decision to revoke community supervision for an
abuse of discretion.  Rickels v. State, 202 S.W.3d 759, 763
(Tex. Crim. App. 2006); In re T.R.S.,
115 S.W.3d 318, 320 (Tex. App.Texarkana 2003, no pet.).  The trial court does not abuse its discretion
if the order revoking community supervision is supported by a preponderance of
the evidence; in other words, if the greater weight of the credible evidence
would create a reasonable belief that the defendant has violated a condition of
his community supervision.  Rickels, 202 S.W.3d at 76364; T.R.S., 115 S.W.3d at 32021. 

            Considering
the unique nature of a revocation hearing and the trial courts broad
discretion in the proceedings, the general standards for reviewing sufficiency
do not apply.  Pierce v. State, 113 S.W.3d 431, 436 (Tex. App.Texarkana 2003,
pet. refd).  Instead, we review the
trial courts decision regarding community supervision revocation for an abuse
of discretion and examine the evidence in a light most favorable to the trial
courts order.  Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); T.R.S., 115 S.W.3d at 321; Pierce, 113 S.W.3d at 436 (citing Garrett v. State, 619 S.W.2d 172, 174
(Tex. Crim. App. [Panel Op.] 1981)).  If
a single ground for revocation is supported by a preponderance of the evidence
and is otherwise valid, then no abuse of discretion is shown.  Sanchez
v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); T.R.S., 115 S.W.3d at 321 (citing Stevens v. State, 900 S.W.2d 348, 351
(Tex. App.Texarkana 1995, pet. refd)). 


            B.        Gallaghans Testimony Leads to the
Finding that She Committed Theft

            Gallaghan
argues that her plea of true to the States motion to revoke community
supervision was not a plea as to each and every allegation.  Following this argument further, Gallaghan
maintains that the State was required to introduce evidence to prove either that
(1) she committed an offense in violation of the terms of her community
supervision by a preponderance of the evidence, or (2) she had not only the
responsibility to pay the court costs, community supervision fees,
Crimestoppers program fee, attorneys fees, $500.00 fine, and restitution ordered
by the court, she possessed the ability to do so. 

            Gallaghan
filed a written plea to the motion to revoke community supervision, in which
she acknowledged in writing that each and every allegation contained in the
Petition was true.[4]  In open court, Gallaghan was asked:

            THE
COURT:  In Cause Number 22083, which is a
motion to revoke your community supervision, Im looking at a document entitled
written plea admonishments on motion to revoke community supervision or
petition to proceed to adjudication. 
Its dated today.  It bears you
and Mr. Massars signatures.  Im going
to show you this document and ask you, do you recall signing this document?

 

            THE
DEFENDANT:  Yes, sir.

 

            .
. . .

 

            THE
COURT:  . . . . Now, you understand, in
each of these documents there is a judicial confession.  In the motions to revoke youre stating that
you violated the terms and conditions of your probation.  And in the theft of property of under 1,500
with two priors, youre confessing to the fact that you did commit that offense
and that you have two prior convictions. 
Do you understand that?

 

            THE
DEFENDANT:  Yes, sir.

 

            .
. . .

 

            THE
COURT:  . . . . In Cause Number 22083,
which is a motion to revoke your community supervision, how do you plead, true
or not true?

 

            THE
DEFENDANT:  True. 

 

The theft allegation contained
within the motion to revoke Gallaghans community supervision gave rise to a
separate prosecution for theft, in which Gallaghan also pled guilty.[5]  A plea of true, standing alone, is sufficient
to support the revocation of community supervision.  Cole v.
State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979).

            In
addition to Gallaghans testimony, her husband, John, testified as well.  John related that Gallaghan had anger
issues and became angry upon discovering that DVDs she had purchased from
Wal-Mart were messed up.  John
testified further that, She went to take them back; they refused to take them
because they were already opened.  Well,
she got upset and she did what she had to do. 
Gallaghan explained that she got very angry, went and got the three
same movies and I traded them out.  She
testified that her action in attempting to take the new DVDs was very stupid.[6]  

            Considering
the record in a light most favorable to the trial courts ruling, we find that
the greater weight of the credible evidence could create a reasonable belief
that Gallaghan committed theft in violation of the condition of community
supervision requiring her to abstain from committing an offense against the
laws of Texas, we affirm the trial courts judgment.  Therefore, the trial court did not abuse its
discretion in revoking Gallaghans community supervision.[7]  

III.       Conclusion


            We
affirm the trial courts judgment. 

             

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June 28, 2011

Date Decided:             July 15, 2011

 

Publish            

 

 











[1]The
courts judgment in companion case number 06-10-00231-CR refers to Gallaghan
Regena Echols, and in cause number 06-10-00233-CR, she is referred to as Regena
Nell Gallaghan.  To avoid confusion, we
list Gallaghans full name in this opinion as well as in our opinions in the
above-referenced companion cases. 





[2]Count
one of the States indictment for the underlying offense of forgery alleged
that Gallaghan altered or executed a check so it is purported to be the act of
Jill Osterbuhr, who did not authorize the act. 
The indictment contained a copy of the check purporting to bear Jill Osterbuhrs
signature.  Gallaghan does not complain
about the indictment relating to this count. 

 





[3]See Morgan v. State, 571 S.W.2d 333
(Tex. Crim. App. 1978). 





[4]Gallaghan
asserts that her written judicial confession was not introduced as evidence at
the trial courts hearing and cannot be considered.  We disagree. 
The written confession signed by Gallaghan was made as part of plea
admonishmentsStates Exhibit No. 1filed with the district clerk and included
in the clerks record that is before us.  We review the entire record when reviewing
complaints regarding sufficiency of the evidence.  Jackson v. Virginia,
443 U.S. 307, 334 (1979).





[5]Gallaghans
pleas on her motion to revoke in this cause, as well as a motion to revoke in
another cause for an underlying offense of credit/debit card abuse, and the
separate theft charge arising from the Wal-Mart incident were all heard simultaneously.  Filing separate briefs, Gallaghan appealed
the trial courts revocation of community supervision for credit/debit card
abuse in our cause number 06-10-00231-CR, as well as her conviction for theft
in cause number 06-10-00233-CR.  





[6]Gallaghan
argues that her testimony did not establish that she left the store with the
DVDs or that the offense was committed in the county where the trial [was]
sought.  However, theft is unlawful
appropriation, or taking, of property with the intent to deprive the owner of
the property.  Tex. Penal Code Ann. § 31.03(a) (West 2011).  [A]sportation--the act of carrying away or
removing property--is not an element of statutory theft.  Hawkins
v. State, 214 S.W.3d 668, 670 (Tex. App.Waco 2007, no pet.); see Nautilus
Ins. Co. v. Steinberg, 316 S.W.3d 752, 756 (Tex. App.Dallas 2010, pet.
denied) (citing Hill v. State, 633
S.W.2d 520, 521 (Tex. Crim. App. 1982)); see
also Edwards v. State, 440 S.W.2d 648, 649 (Tex. Crim. App. 1969).  Also, because the conditions of Gallaghans
community supervision prevented her from committing an offense against the
laws of this State, or any other State or of the United States, the theft was
not required to be committed in Lamar County for the purposes of the revocation
proceeding.

 





[7]Because
the ground alleging Gallaghan violated her community supervision by committing
theft was supported by a preponderance of the evidence, we need not reach
Gallaghans complaints that the State failed to prove she had the ability to
pay the court costs, community supervision fees, Crimestoppers program fee,
attorneys fees, $500.00 fine, and restitution imposed by the conditions of
community supervision.