# NOS. 12-07-00239-CR
# 12-07-00240-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARLOS MAGNO FLORES,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Carlos Magno Flores appeals his convictions for deceptive business practices. In two issues, Appellant argues that the evidence was legally and factually insufficient to support his convictions. We affirm.

### BACKGROUND

Appellant was charged by two separate informations with deceptive business practices, a Class A misdemeanor.[1] The first information alleged that Appellant, in the course of business, committed a deceptive business practice when he intentionally, knowingly, recklessly, or with criminal negligence made a materially false or misleading statement in connection with the sale of property, a water filter device, leading Eleazar Alvizu to believe that the tap water in his home was contaminated. In the second information, Appellant was charged with the same deceptive business

---

[1] *See* TEX. PENAL CODE ANN. § 32.42(b)(12)(B), (d)(Vernon 2003).

practice, but the complainant was Yeni Velazquez. Appellant pleaded "not guilty" to the charges in both informations.

At trial, Alvizu testified that Appellant came to his house to check his tap water. After testing, Appellant told Alvizu that his tap water was contaminated, that it contained germs that could affect his health, and that it would cause him to become sick. Alvizu also testified that Appellant told him the water filter device he was selling would help him "be more healthy." Alvizu agreed to buy one of the water filter devices, signed a retail installment contract, and had the product installed in his home. He stated that he would not have bought the water filter device if Appellant had not told him that his tap water was contaminated. Later, Alvizu discovered that his water was safe to drink and not contaminated.

Velazquez stated that Appellant came to her house and told her that he was doing a "census" to test her tap water. After testing, Appellant told Velazquez that her water was "no good," bad to drink, and very bad for her and her family's health. He stated that her water contained chemicals, pesticides, lead, diseases, and "micro stuff." He told her that if she and her family, including her four year old son, drank the water, they could become sick with diseases and cancer. He also told her that her son could get sick in numerous ways including cancer and kidney problems, and that the lead in the water could damage her son's learning skills. According to Velazquez, Appellant told her that his child was born sick because his wife drank water from a city when she was pregnant. She also testified that Appellant told her the solution to her problems was a water filter device. He told her that the government was very concerned about anthrax being put in the water and that, with this water filter device, she and her family would not be at risk for anthrax or any other chemical.

After Velazquez signed the contract and the water filter device was installed, she believed it was not working because, among other problems, she and her family noticed their bodies itched after taking a shower. She admitted that she would not have purchased the water filter device if she had known that she and her family were not at risk of getting cancer or mental disabilities from drinking her tap water.

Rosa Villegas stated that Appellant came to her home and, after testing her tap water, told her that the water contained lead, her family could become sick, and her children could develop cancer and other illnesses. Appellant told Villegas that the water filter device would solve her

problems. Villegas stated that she would not have purchased the water filter device if she had known that she and her family would not get cancer from the tap water. However, she admitted that Appellant was not present when she signed the contract for the water filter device and his name was not on the contract.

Juan Marcelo Garcia, Velazquez's husband, stated that Appellant told him their tap water was not as clean as they believed and that, over a period of time, the water could cause cancer and affect their health. He stated that Appellant mentioned cases where persons became "deformed" because of the water, including a child close to him who was born "deformed" because of the water the mother drank while pregnant. Two other people testified that they bought the same water filter device after being told their tap water was contaminated, but one of them stated that the person who sold him the product was not Appellant.

Sidney McAllister testified that he worked for the City of Athens for approximately seven years as a licensed plumbing inspector. To his knowledge, in the seven years that he worked for the city, the drinking water had always been in good standing and available for drinking. Two families complained about the water filter devices after being told that their tap water was not drinkable. He said their water had been tested with standard pool testing kits that, if not understood, can seem to indicate the water is not safe for drinking. Further, he stated that the water filter devices had been installed incorrectly, because they were tied straight to the cemetery sewer or raw sewage.

After a jury trial, Appellant was found guilty of both offenses as charged. The jury assessed his punishment for both offenses at 365 days of confinement in jail and a $4,000 fine.[2] This appeal followed.

## ISSUES

In his brief, Appellant states that he is challenging the legal and factual sufficiency of the evidence to support his convictions. After reviewing Appellant's brief, however, we conclude that he has raised the following issues:

---

[2] An individual adjudged guilty of a Class A misdemeanor shall be punished by a fine not to exceed $4,000, confinement in jail for a term not to exceed one year, or both such fine and confinement. TEX. PENAL CODE ANN. § 12.21 (Vernon 2003).

3

1. The complaint and information in each case did not contain any specific allegations of how Appellant acted recklessly or negligently as required by article 21.15 of the Texas Code of Criminal Procedure.

2. The jury charge in each case did not contain any specific allegation of how Appellant acted recklessly or negligently.

3. It is impossible to determine what the jury found his culpable mental state to be at the time of the offense, and therefore the jury charge in each case permitted a less than unanimous verdict.

4. The evidence is insufficient to show that the person testifying as the complainant in trial court cause number 2006-0509CL2 (appellate cause number 12-07-00240-CR) was the same person named as the complainant in the complaint and information.

## APPLICABLE LAW

A person commits a deceptive business practice if, in the course of business, he intentionally, knowingly, recklessly, or with criminal negligence makes a materially false or misleading statement in connection with the sale of property. TEX. PENAL CODE ANN. § 32.42(b)(12)(B) (Vernon 2003). If an accused does not object to a defect, error, or irregularity of form or substance in an information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal. TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005). In other words, an accused must object to any error in the information before the day of trial and certainly before the jury is empaneled. *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). Further, this is a statutory requirement, not a constitutional requirement, and thus, all substantive defects in informations may be waived and do not render the information void. *See id.* at 178.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). Moreover, an appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(h).

In addressing a jury charge issue, we must first decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we analyze that error for harm. *Id.*

4

Preservation of charge error does not become an issue until we assess harm. *Id.* The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.*

## COMPLAINTS AND INFORMATIONS

Appellant argues that the complaints and informations in each case did not contain any specific allegation of how he acted recklessly or negligently as required by article 21.15 of the Texas Code of Criminal Procedure. According to the record in each case, Appellant failed to object to any defect, error, or irregularity of form or substance in the complaints or informations before trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b). Nor did he complain to the trial court by a timely request, objection, or motion that the complaints or informations did not contain specific allegations of how he acted recklessly or negligently. *See* TEX. R. APP. P. 33.1(a)(1)(A). Thus, he has waived any alleged defects, errors, or irregularities in the complaints and informations.

## JURY CHARGES

Regarding Appellant's challenge to the jury charges, we must first determine whether charge error exists. *See Ngo*, 175 S.W.3d at 743. Appellant contends that the jury charges did not include a specific allegation of how he acted recklessly or with criminal negligence. The applicable statute provides that a person commits a deceptive business practice if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence makes a materially false or misleading statement in connection with the sale of property. *See* TEX. PENAL CODE ANN. § 32.42(b)(12)(B). The first jury charge states as follows:

> Now, if you find from the evidence beyond a reasonable doubt that . . . CARLOS MAGNO FLORES, did unlawfully then and there in the course of business, commit a deceptive business practice in that the defendant did then and there intentionally, knowingly, recklessly or with criminal negligence make a materially false or misleading statement in connection with the sale of a property, namely, a water filter device, to wit: leading Eleazer Alvizu to believe that the tap water in her home was contaminated, you will find the defendant guilty as charged in the information.

The same jury charge was provided for the complainant Yeni Velazquez. The jury charges track the language of the statute, and specifically allege how Appellant acted recklessly or with criminal negligence toward both complainants. Because both jury charges allege the acts relied upon for the

5

jury to find that Appellant committed the offense recklessly or with criminal negligence, we conclude that the jury charges were not erroneous. Because there is no charge error, we do not address the issue of harm. *See* ***id.***

## CULPABLE MENTAL STATE

Appellant also contends that it is impossible to determine what the jury found his culpable mental state to be at the time of the offense. Thus, he implicitly urges that the jury charge in each case permitted a less than unanimous verdict. In his brief, Appellant's entire argument consists of one conclusory sentence. Even under a liberal construction of Appellant's brief, this statement does not contain a concise argument for the contentions made with appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(h). Because Appellant did not provide an adequate substantive analysis of this issue, he has presented nothing for our review. *See* ***id.***

## COMPLAINANT

Finally, in the second case (appellant cause number 12-07-00240-CR) Appellant contends that "Yeni" Velazquez never testified and that there is insufficient evidence that "Jenny" Velasquez was one and the same person as "Yeni" Velazquez. The information identifies "Yeni" Velazquez as the complainant. At trial, the State called "Yeni" Velasquez to the stand and she was sworn by the trial court. The witness stated that her name was "Jenny" Velasquez, and testified that Appellant came to her home, tested her tap water, and told her that the tap water was "no good" and bad for her health and for that of her child. She also stated that Appellant's solution to the tap water problem was a water filter device. "Jenny" testified that State's exhibit 7, which was introduced and admitted without objection at trial, was a copy of the retail installment contract for the water filter device. She stated that she signed the contract and identified the signature on the contract as hers. The contract identifies "Yeni" Velasquez as the buyer of the water filter device and the signature is that of "Yeni" Velazquez. Contrary to Appellant's arguments, there is more than enough evidence to conclude that the complainant identified in the complaint, information, and jury charge, "Yeni,"

6

and the complainant who testified at trial, "Jenny," are one and the same person.[3]

**CONCLUSION**

For the reasons stated above, Appellant has waived his first and third issues relating to the specificity of the complaints and informations and the portions of the jury charges relating to the culpable mental state. His second and fourth issues pertaining to the specificity of the jury charges and the sufficiency of the evidence supporting the identity of the complainant are without merit. Accordingly, Appellant's first, second, third, and fourth issues are overruled, and the judgments of the trial court are ***affirmed***.

   SAM GRIFFITH   
Justice

Opinion delivered October 31, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[3] We note that the complainant's surname is variously spelled as "Velazquez" and "Velasquez," particularly in the retail installment contract. Based on the evidence presented by the complainant, we conclude that the irregular spelling of her surname does not change the result.