**Opinion filed February 9, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00249-CR

_____

## CAROL JOHNENE MORRIS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR36894**

## M E M O R A N D U M   O P I N I O N

The jury convicted Carol Johnene Morris, appellant, of the offense of theft in the amount of $1,500 or more but less than $20,000. Upon finding the enhancement allegations to be true, the jury assessed punishment at confinement for a term of twenty years and a fine of $10,000. We affirm.

### Issues

Appellant presents eight points of error on appeal. In her first point, appellant asserts that the trial court committed reversible error by denying appellant any assistance from court-appointed standby counsel and by depriving appellant of adequate and meaningful access to the

courts and to the law library. In her second point, appellant contends that the trial court erred in denying appellant's pretrial motions to quash, to dismiss, and to strike. In her third point, appellant challenges the legal and factual sufficiency of the evidence to support her conviction. In the fourth point, appellant asserts that the State failed to present sufficient evidence to prove the proper sequence of her prior felony convictions used for enhancement purposes. In her fifth point, appellant argues that the trial court's charge to the jury was erroneous. In the sixth point, appellant contends that the trial court's charge on punishment was calculated to violate her substantive rights. In her seventh point, appellant argues that the judge of the trial court erred by not recusing himself. In her final point, appellant contends that the trial court erred by denying her motion to suppress.

*Right to Counsel and Access to Courts*

In her first point, appellant complains that she was deprived of the right to counsel at trial and of adequate access to the courts. We disagree. The record shows that the trial court appointed an attorney to defend appellant but that appellant subsequently insisted upon representing herself. The record shows that the trial court conducted a *Faretta*[1] hearing and appropriately admonished appellant of the dangers and disadvantages of self-representation. Appellant, nevertheless, persisted in her desire to waive counsel and represent herself, and the trial court determined that appellant knowingly and intelligently waived her right to counsel and asserted her right to self-representation. The trial court granted appellant's motion to waive counsel and permitted appellant to exercise her Sixth Amendment right to represent herself. Thus, the trial court did not deprive appellant of her right to counsel; she waived that right.

Furthermore, a criminal defendant who exercises the right of self-representation is not entitled to hybrid representation through the assistance of standby counsel, though a trial court may permit hybrid representation as long as standby counsel does not interfere with the defendant's control of the case. *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989). The record shows that appellant was admonished that she had no right to standby counsel. Appellant acknowledged this admonishment in her motion for access to the law library wherein she stated that she had asserted her constitutional right to self-representation and that the trial court had informed her that she "was not entitled to hybrid representation: attorney and self-representation." The record shows that the trial court did appoint standby counsel, that standby

---

[1]*Faretta v. California*, 422 U.S. 806 (1975).

2

counsel actually assisted appellant upon her request at a pretrial hearing, and that standby counsel also appeared at trial. Appellant did not provide this court with a reference to the record to support her assertion that standby counsel's assistance was precluded. *See* TEX. R. APP. P. 38.1(i). We have reviewed the record but have found nothing indicating that the trial court interfered with standby counsel's assistance of appellant or that appellant was denied access to the law library or to the courts. Appellant's first point of error is overruled.

*Indictment*

In her second point, appellant complains of the denial of her pretrial motions to dismiss and quash the indictment and strike the enhancement paragraphs. Appellant specifically argues under this point that the indictment was improperly amended in violation of TEX. CODE CRIM. PROC. ANN. arts. 28.10–.11 (West 2006) because the State failed to file a motion to amend the original indictment and because the amendment charged appellant with an additional offense. The record does not show, however, that the indictment in this case was ever amended. Instead, it shows that appellant was originally indicted by a grand jury in an indictment filed on February 4, 2010, and that, approximately four months prior to trial, appellant was reindicted by a grand jury in a separate indictment filed on March 31, 2010, and styled "RE-INDICTMENT." Because there was no amendment to an indictment in this case, the articles governing the procedure for amending an indictment are inapplicable. Appellant's second point of error is overruled.

*Sufficiency of the Evidence*

In her third point, appellant challenges the legal and factual sufficiency of the evidence to support her conviction for theft by deception. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

3

Appellant was charged with and convicted of the offense in this case for unlawfully acquiring and exercising control over U.S. currency valued at $1,500 or more but less than $20,000 "by deception" from Manuel Valdez without his effective consent and with the intent to deprive him of such currency. "Deception," with respect to the offense of theft, is defined by statute as:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
>
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
>
> (C) preventing another from acquiring information likely to affect his judgment in the transaction;
>
> (D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
>
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1) (West Supp. 2011). The jury charge encompassed Section 31.01(1)(A), (B), (D), and (E).

The record shows that Valdez testified regarding his dealings with appellant. Valdez, who was in the business of buying houses, remodeling them, and selling them for a profit, testified that appellant came to him and offered to sell him two lots for $3,000. Valdez agreed, signed the contract that appellant drew up, and gave appellant a check for $3,000. This check cleared Valdez's bank account on September 28, 2009. Appellant then offered to sell another lot to Valdez for $12,000. Valdez agreed, signed the contract, and gave appellant a check for half of the agreed purchase price. This check cleared Valdez's bank account on October 6, 2009. According to Valdez, Morris never indicated that the lots were owned by anyone other than herself. However, Valdez was later informed by an attorney at Lone Star Abstract and Title Company, where the closing was supposed to take place, that the sale could not go through because Morris did not own the lots. Morris refused to return any of the money that Valdez had

4

given her for the lots. The following documents were admitted into evidence: a signed receipt and contract indicating appellant owned these properties and was selling them to Valdez; copies of the checks from Valdez to appellant, which were endorsed on the back by appellant; and the demand letter from Valdez to appellant.

John Brian Martin, general counsel for Lone Star Abstract and Title Company, was recognized by the trial court as an expert in the field of title work as it relates to determining the ownership of real property. Martin testified that, in examining the title to the properties involved in the transactions between Valdez and Morris, he determined that the lots in question had previously been owned by appellant's parents and that Morris owned only 16.67%, also stated as 3/18, of each lot. Martin's testimony was supported by a 1986 judgment declaring the heirship of appellant's father; appellant's written disclaimer of any interest in her father's estate, which was filed in 1986; and appellant's mother's holographic will, which was probated in 2001. These documents show that appellant was not the only heir or beneficiary of her parents' estates and that she had disclaimed any interest in her father's estate. Martin testified that, when he explained to appellant that she was not the sole owner of the properties, appellant "got real agitated and upset" and told Martin that "it was none of [Lone Star's] business.

Matthew Tepper, an attorney who represents taxing jurisdictions and appraisal districts throughout Texas, testified regarding a prior civil lawsuit brought by appellant against Midland Central Appraisal District. In that suit, appellant sought the removal of the words "et al" from the district's identification of various properties that the district listed as being owned by "Morris Carol J et al." The trial court denied the relief requested by appellant and entered a take-nothing judgment against her on April 23, 2008.

Braggston Morris testified that he was legally adopted by appellant's parents but that biologically he was their grandson. The record shows that Braggston was an heir to appellant's father's estate, as shown in the judgment of heirship, and that he was a beneficiary and the executor of appellant's mother's estate. Braggston testified that he allowed appellant to manage the properties but never authorized appellant to sell any of the properties.

Cicelee McMaryion testified that she lived at 501 South Tyler, which was the property involved in the $12,000 contract between appellant and Valdez. McMaryion testified that, on August 25, 2009, she and appellant reached an agreement in which appellant agreed that McMaryion could purchase the property for $15,000 in a lease-to-buy arrangement. McMaryion

produced a receipt signed by appellant and dated October 1, 2009, that stated: "Lease to Buy – 501 S. Tyler St." The receipt showed an account balance of $13,600. McMaryion testified that, at the time of appellant's trial, she had paid approximately $5,000 or $6,000 toward the purchase price.

After reviewing all of the record, we conclude that the evidence is sufficient to show that appellant unlawfully acquired and exercised control over U.S. currency valued at $1,500 or more but less than $20,000 from Valdez by deception, without his effective consent, and with the intent to deprive him of that money. Appellant's third point of error is overruled.

*Enhancement Proof*

In her fourth point, appellant asserts that the State failed to present sufficient evidence to prove the proper sequence of her prior felony convictions used for enhancement purposes under former TEX. PENAL CODE § 12.42(a)(2) (2009).[2] Section 12.42(a)(2) provided:

> If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a second-degree felony.

The record from appellant's trial shows that the State abandoned the enhancement paragraphs in the reindictment[3] and, instead, relied upon the notice of intent to enhance appellant's punishment, which had been filed prior to trial. In the notice of intent, the State alleged in the first enhancement paragraph that, before the commission of the primary offense, appellant was convicted of the felony offense of forgery by passing on July 27, 1988, in Cause No. 5793 in the 132nd District Court of Scurry County. In the second enhancement paragraph, the State alleged that, before the commission of the primary offense and before the commission of the offense alleged in the first enhancement paragraph, appellant was convicted of the felony offense of forgery by passing with intent to pass in Cause No. CRA-10,176 in the 142nd District Court of Midland County on or about July 11, 1985. In the third enhancement paragraph, the State alleged that, before the commission of the primary offense and before the commission of the offense alleged in the first enhancement paragraph, appellant was convicted of the felony

---

[2]The current version of this statute, effective September 1, 2011, is located at TEX. PENAL CODE ANJN. § 12.425(b) (West Supp. 2011). However, former Section 12.42(a)(2) applies in the present case because it was in effect on the date of the offense.

[3]The State concedes in its brief that appellant's prior convictions as alleged in the reindictment were not in the proper sequence.

offense of theft of property of $200 or more but less than $10,000 on or about July 11, 1985, in Cause No. CRA-10,066 in the 142nd District Court of Midland County.

The pen packets for these three offenses were admitted into evidence during the punishment phase of trial. As required for the enhancement of a sentence under Section 12.42(a)(2), these exhibits show that appellant had previously been convicted of two felonies and that the second previous felony conviction (the 1988 Scurry County conviction) is for an offense that occurred subsequent to the first previous conviction (either of the Midland County convictions) having become final. The Scurry County offense occurred on December 9, 1987, and appellant's conviction in the Midland County cases became final upon the mandate of the court of appeals, which was sometime prior to July 11, 1985, the date that the commitment order was signed. Based upon the evidence presented, a rational jury could have found, beyond a reasonable doubt, the proper sequence of appellant's prior felony convictions as required for enhancement under Section 12.42(a)(2). Appellant's fourth point of error is overruled.

*Jury Charge*

In her fifth point, appellant argues that the trial court erred in refusing to charge the jury on her requested defensive theories: necessity and mistake of fact. We disagree. Though a defendant is entitled to an instruction on every defensive issue raised by the evidence (even if such evidence is weak, impeached, or contradicted), the defensive theories suggested by appellant in this case were not raised by the evidence.

The record shows that the trial court initially granted appellant's request to include an instruction on mistake of fact but that the trial court subsequently removed the instruction after appellant objected to the inclusion of language indicating that the mistake of fact was her belief that she was the "sole owner" of the properties. Appellant indicated that she had "never thought [she] was the sole owner" but that, as one of the owners, she thought she had a right to sell the properties. The trial court ruled that appellant was not entitled to an instruction on mistake of fact on such basis.

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (West 2011). Appellant was not entitled to an instruction on the defense of mistake of fact. As indicated by her statement to the trial court, she was not mistaken as to a fact (i.e., who owned the properties) but, instead,

7

appeared to be mistaken as to the law (i.e., whether, as part owner, she had the right to sell the properties). *See id.* § 8.03(a) (ignorance of the law is not a defense).

As to the defense of necessity, appellant seems to be arguing that it was necessary for her to sell some of the properties to save the properties from an impending auction. Appellant was not entitled to an instruction on the defense of "necessity." Section 9.22 of the Penal Code provides in part that conduct is justified if "the actor reasonably believes the conduct is immediately necessary to avoid imminent harm" and if "the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." *Id.* § 9.22(1), (2). The trial court did not err in refusing to include appellant's requested defensive theories in the jury charge.

Appellant also asserts that she was denied the right to submit evidence of the impending auction. Additional evidence regarding the auction was properly excluded as it was not relevant to any viable defense. Moreover, appellant has not cited us to any page in the record where the trial court prohibited appellant from introducing evidence that would support a defensive theory. Appellant's fifth point of error is overruled.

*Charge on Punishment*

In the sixth point, appellant contends that the trial court's charge on punishment was calculated to violate her substantive rights. Appellant asserted at trial and argues on appeal that her 1988 Scurry County conviction could not be used for enhancement because the indictment was fundamentally defective. Although the indictment in the Scurry County case was defective, it was not fundamentally defective. The Texas Court of Criminal Appeals specifically determined in *Ex parte Morris*, 800 S.W.2d 225 (Tex. Crim. App. 1990), that the indictment in the Scurry County case, though flawed, was sufficient to constitute an indictment and support appellant's conviction and that appellant was prohibited from raising the defect for the first time in a postconviction proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). Appellant's Scurry County conviction is not void. *Morris*, 800 S.W.2d 225; *see Teal v. State*, 230 S.W.3d 172 (Tex. Crim. App. 2007). Therefore, the trial court did not err in authorizing the jury to enhance appellant's punishment using that conviction. Appellant's sixth point of error is overruled.

*Recusal*

In her seventh point, appellant argues that the judge of the trial court, the Honorable Rodney Satterwhite, should have been recused based upon a conflict of interest and his inability to be impartial. Appellant filed a motion to recuse after she discovered that Judge Satterwhite had represented BP America Production Co. in a civil case against Midland Central Appraisal District. Judge Satterwhite declined to recuse himself and referred the matter to the presiding judge of the administrative judicial district. At the hearing on the motion, appellant further asserted that she believed Judge Satterwhite was either in the same building or in the same firm as the attorney for Endeavor Energy Resources, against whom appellant claimed to have a cause of action. The judge presiding over the hearing denied appellant's motion to recuse as unfounded and without merit. We find no abuse of discretion in the denial of the motion to recuse. *See Gaal v. State*, 332 S.W.3d 448 (Tex. Crim. App. 2011) (setting out the reasons that a judge may be removed and the standard of review). Appellant's seventh point of error is overruled.

*Motion to Suppress*

In her eighth point, appellant contends that the trial court erred by denying her motion to suppress the affidavit in support of the arrest warrant. The record shows that the trial court granted appellant's motion to suppress that affidavit. The record further shows that the affidavit was neither offered nor admitted into evidence at trial. Accordingly, appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

February 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[4]

---

[4]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.