

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FRANCISCO LESA, III, | § | No. 08-23-00109-CR |
| Appellant, | § | Appeal from the |
| v. | § | 399th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2023CR1281) |

## MEMORANDUM OPINION[1]

A jury found appellant, Francisco Lesa, III, guilty of the felony offense of stalking. The trial court assessed punishment at ten years' confinement and a fine of $2,500, suspended the sentence, and placed him on community supervision for ten years. In two issues on appeal, appellant asserts the trial court erred (1) by admitting Facebook messages that had not been properly authenticated, and (2) by instructing the jury on the felony offense of stalking when the indictment charged only the misdemeanor offense of harassment. We affirm.

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

# FACEBOOK MESSAGES

Appellant first asserts the trial court erred by admitting seventeen screenshots taken of Facebook messages because the messages were not properly authenticated by the complainant, Marlene Navarro.

## A. Factual background[2]

Appellant and Navarro met in 2014 when they both lived in San Marcos. Navarro testified the two kissed once or twice; however, they were not dating, and she had told appellant she only wanted to be friends. Navarro said she never told anyone about the kisses. In 2017, Navarro moved to San Antonio. Navarro said that, although she and appellant were not Facebook friends, he began messaging her via the Facebook messenger app. She stated she blocked him when he first began to send her messages, but then he started using a different Facebook account to send her messages. Navarro said appellant also left a teddy bear and flowers on her car. After becoming concerned for her safety, Navarro began to save screenshots of the messages and she eventually reported appellant to the police. When Navarro mentioned the screenshots, defense counsel objected and requested a hearing for the purpose of authenticating the screenshots.

During a hearing outside the jury's presence, the State showed Navarro seventeen exhibits; each a separate screenshot of numerous Facebook messages purportedly sent from appellant to Navarro. Exhibits one through six identified the sender as "Frank" and, in addition to the numerous messages, included a photo of him with his cat next to the name "Frank." Exhibits seven through nine identified the sender as "Facebook User," but contained messages similar to those in exhibits one through six. Exhibit seven contained a photo of Navarro's car that appellant said he took when

---

[2] Appellant does not contest the legal or factual sufficiency of the evidence to support his conviction; therefore, only the facts necessary for disposition of his issues will be discussed.

he saw her driving on the highway. Exhibits ten through twelve and fourteen through seventeen identified the sender as "Frank." Exhibit thirteen contained a photo next to the sender identified as "Francisco." Although the photo in exhibit thirteen was different from the photo in exhibits one through six, the message referenced leaving flowers on Navarro's car.[3] "Frank's" message in exhibit fourteen stated, "None of the flowers where [sic] ment [sic] to creep you out or anything like that, you are a beautiful girl and thought I would give u flowers. . . . I have never tried like I have with you to repair things, this is probably my 7th account and I never ment [sic] to even make a second one." "Frank's" message in exhibit fifteen again mentioned the different accounts: "This account will be open for a little while and I will deactivate. I will do my best to leave you alone. You being mean to me kind of made me push things a little." In almost all the messages, the sender referred to Navarro as "u" or "ur," mentioned her beauty, their kissing, wondered why Navarro had blocked him or cut him off, and the sender's desire to "fix" or "repair" their relationship.

When asked to identify the screenshots, Navarro said they were messages "from Frank Lesa."[4] The State asked how she knew the first message was from appellant and she replied, "[h]is name, Frank, and his picture with his black cat." Finally, Navarro confirmed all the exhibits were fair and accurate depictions of her screenshots. Defense counsel then asked Navarro about the screenshots:

> Q.  Ms. Navarro, if I may, you said you identified them. You were able to identify it came from Frank, you said, because of a Facebook photo?
>
> A.  And the pattern of the messages, correct.
>
> Q.  Okay. Would you agree with me that on some of these, it just simply says "Facebook user"?

---

[3] In the message, Navaro asked, "I have cameras, why are you still leaving flowers on my car?" "Francisco" replied, "I will not do anything else."

[4] Navarro referred to appellant as "Frank" throughout her testimony.

A. It does say that.

Q. Okay. Do you have any other authentication or on this one -- in this particular instance, it says "Frank" and there is no photo. Is that correct?

A. That's correct that that's how it is.

Q. Yes, ma'am. Do you have any authentication method, IP address, or any kind of, like, text back where you communicated back and forth with each other or no?

A. Everything that is in those messages.

Q. Everything's contained within those screen shots?

A. Yes. Everything that we have here today.

Defense counsel objected that the screenshots had not been properly authenticated to show they were messages from appellant. The court overruled the objection, and the jury was recalled. The State once again asked Navarro if she recognized the seventeen screenshots and she replied, "Frank's been messaging me, his name, his face, and just the context of -- and the pattern of the messages." The trial court again overruled defense counsel's objection and the seventeen exhibits were admitted before the jury.

San Antonio Police Department Investigator Roberto Garcia testified he investigated Navarro's allegations against appellant. Garcia stated he did not send a subpoena to Facebook which he could have obtained a printout explaining the IP address, sender's address, and other information. He said such information would have been helpful to verify the identity of both the sender and the recipient, but he could give no reason for not obtaining the information in this case. Garza believed the messages "all deal with the same subject matter."

**B. Applicable law**

The decision of whether to admit evidence at trial is a preliminary question to be decided by the trial court. *See* TEX. R. EVID. 104(a). An item is authenticated when there is sufficient proof "to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). A

proponent may authenticate evidence in multiple ways, including by direct testimony from a witness with personal knowledge or by circumstantial evidence. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Evidence may also be authenticated by "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." TEX. R. EVID. 901(b)(4). "In the context of communications, the authentication issue that generally arises is whether the evidence is sufficiently linked to the purported author." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (not designated for publication). "With respect to electronic communications—such as e-mails, text messages, and as in this case, Facebook—the rules of evidence, including rule 901, are considered at least generally 'adequate to the task.'" *Id.*

"Conversations and events that precede or follow the communications at issue, when identified or referred to within the written communication, can provide contextual evidence demonstrating the authenticity of such communications." *Butler v. State*, 459 S.W.3d 595, 604 (Tex. Crim. App. 2015). Sometimes the communication contains information only the purported sender would be expected to know. *Tienda*, 358 S.W.3d at 640; *see also Campbell*, 382 S.W.3d at 552 (noting, "messages reference the incident and potential charges, which at the time the messages were sent, few people would have known about"). "Sometimes the purported sender has responded to an exchange of electronic communications in such a way as to indicate circumstantially that he was in fact the author of the particular communication, the authentication of which is in issue." *Tienda*, 358 S.W.3d at 641. "And sometimes other circumstances, peculiar to the facts of the particular case, have sufficed to establish at least a prima facie showing of authentication." *Id.*

5

"In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler*, 459 S.W.3d at 600; *Tienda*, 358 S.W.3d at 638 ("The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder—the jury, in a jury trial."). "Conclusive proof of authenticity before allowing admission of disputed evidence is not required." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). Rule 901 requires only "some evidence" to support a finding that the evidence at issue is what the proponent says it is. *Id.*

"Whether the proponent has crossed this threshold as required by Rule 901 is one of the preliminary questions of admissibility contemplated by Rule [of Evidence] 104(a)." *Tienda*, 358 S.W.3d at 638. We review a trial court's threshold determination of authenticity under an abuse-of-discretion standard. *Butler*, 459 S.W.3d at 600. "If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere." *Tienda*, 358 S.W.3d at 638.

## C. Analysis

Six of the screenshots bear appellant's photograph and his name, "Frank." Other screenshots identify the sender as "Frank" or "Francisco." Although this alone is not sufficient to authenticate appellant as the author, when combined with other circumstantial evidence, the record may support a finding by a rational jury that appellant both authored and sent the messages. *See Tienda*, 358 S.W.3d at 641–42 ("That an email on its face purports to come from a certain person's email address, that the respondent in an internet chat room dialogue purports to identify himself, or that a text message emanates from a cell phone number assigned to the purported author—none

6

of these circumstances, without more, has typically been regarded as sufficient to support a finding of authenticity."). Accordingly, we next examine whether the remaining evidence supports the trial court's ruling.

All the messages contain internal characteristics that tend to connect appellant as the author. Fifteen of the seventeen messages referred to Navarro as "u" and/or "ur." Exhibit thirteen did not contain a photo, but identified the sender by appellant's first name, "Francisco," and referenced leaving flowers on Navarro's car. Exhibit 14 again referenced the flowers and stated this was "probably my 7th account and I never ment [sic] to even make a second one." Exhibit fifteen again mentioned the different accounts. In almost all the messages, the sender mentioned Navarro's beauty, their kissing (about which Navarro told no one), wondered why Navarro had blocked him or cut him off, and the sender's desire to "fix" or "repair" their relationship.

On this record, we conclude there was prima facie evidence such that a reasonable jury could have found that the Facebook messages were created by appellant. Accordingly, we cannot conclude the trial court abused its discretion by admitting the screenshots into evidence over appellant's objection. Therefore, we overrule his first issue on appeal.

## JURY CHARGE

Appellant originally was charged by indictment on three counts. The indictment stated the charge as "stalking – 2nd." After the State closed its case-in-chief, the State abandoned the second and third counts. In his second issue, appellant contends that after the State abandoned Counts 2 and 3, all that was left was an allegation of harassment in Count 1. Therefore, he asserts the trial court erred by instructing the jury on the offense of felony stalking because Count 1 of the indictment alleged only misdemeanor harassment. The State asserts appellant did not preserve this issue for appellate review. We first address the State's waiver argument.

7

### A. Waiver

The State contends appellant did not preserve this issue because he did not object to the indictment prior to trial. Appellant concedes he did not object to the indictment before trial, but he insists his challenge is to error in the jury charge and not a challenge to the sufficiency of the indictment.

On the last day of trial, during the charge conference, defense counsel argued the jury should be instructed on the offense of harassment because Count 1, the only remaining count, alleged harassment and not stalking. Counsel contended (1) the indictment was defective "as to a stalking charge; however, harassment certainly fits," (2) the State did not provide adequate notice as to Count one, "[t]hey are missing language," and (3) the defense was left "more or less [with] trial by surprise." Finally, defense counsel argued as follows:

> In the stalking statute it says . . . on one or more. What we have in the indictment is it says that it's repeated, which is a hallmark of harassment. That actually furthers and goes towards that it being the harassment charge as opposed to a stalking charge.

The State relies on the above arguments by defense counsel to contend appellant challenged only the indictment. We disagree. Defense counsel acknowledged Counts 2 and 3 alleged the felony offense of stalking and contended, without disagreement by the State, that Count 1 alleged harassment. However, because the State abandoned Counts 2 and 3, defense counsel asserted that "submitting anything besides a harassment charge to the jury would be improper[.]" Almost the entirety of the charge conference revolved around whether the trial court should instruct the jury on only the misdemeanor offense of harassment or instruct the jury on the felony offense of stalking and the lesser-included offense of harassment. The trial court ultimately overruled defense counsel's objection. Because the premise of appellant's objection was that the jury should not be

8

charged on stalking and should only be charged on harassment, we conclude the issue of whether the trial court improperly instructed the jury on the felony offense of stalking was preserved for our review.

### B. Applicable law governing jury charge error

When analyzing a complaint about a jury charge, we first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If there was error, we next analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the defendant preserved the error by objecting to the charge at trial. *Id.* When, as here, the defendant objected, we will reverse if we find "some harm." *Id.* The "some harm" standard requires error that was calculated to injure the defendant's rights. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009), *overruled on other grounds by Sandoval v. State*, 665 S.W.3d 496, 537 (Tex. Crim. App. 2022). There must be "some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (internal citation omitted).

"A defendant may be tried only on the offenses alleged in the indictment." *Gore v. State*, 332 S.W.3d 669, 673 (Tex. App.—Eastland 2010, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) ("It is now axiomatic that a defendant is to be tried only on the crimes alleged in the indictment and not for being a criminal generally.")). Therefore, a trial court is required to deliver a charge "distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14. A jury charge may not enlarge the alleged offense or authorize the jury to convict a defendant on a basis or theory permitted by the jury charge but not alleged in the indictment. *Castillo v. State*, 7 S.W.3d 253, 258 (Tex. App.—Austin 1999, pet. ref'd).

### C. The indictment

Following the indictment's heading, which stated "STALKING -2ND," Count 1 of the indictment alleged as follows:

On or about the 11TH day of June 2017 through on or about 30th Day of March, 2018, FRANCISCO LESA III, hereinafter referred to as defendant, did knowingly engage in conduct directed towards Marlene Navarro, hereinafter referred to as complainant, to-wit: knowingly engage in conduct that constituted an offense under Section 42.07 of the Texas Penal Code, namely; by sending repeated electronic Communications, to COMPLAINANT in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another;

1. and pursuant to the same scheme and course of conduct, on or about the 11th Day of June, 2017, defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass another, namely, THE COMPLAINANT, did send repeated electronic communications, to THE COMPLAINANT in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another, to-wit: sending the complainant a Facebook message;

2. and pursuant to the same scheme and course of conduct, on or about the 14th Day of September, 2017, defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass another, namely, THE COMPLAINANT, did send repeated electronic communications, to THE COMPLAINANT in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another, to-wit: sending the complainant a photo purported to be complainant's car;

3. and pursuant to the same scheme and course of conduct, on or about the 19th Day of November, 2017, defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass another, namely, THE COMPLAINANT, did send repeated electronic communications, to THE COMPLAINANT in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another, to-wit: sending the complainant a Facebook message;

4. and pursuant to the same scheme and course of conduct, on or about the 5th Day of March, 2018, defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass another, namely, THE COMPLAINANT, did send repeated electronic communications, to THE COMPLAINANT in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another, to-wit: sending the complainant a Facebook message . . .[.]

Counts 2 and 3 alleged that appellant,

pursuant to the same scheme and course of conduct . . . did knowingly engage in conduct directed towards Marlene Navarro . . . that the defendant knew and reasonably believed [Navarro] would regard as threatening BODILY INJURY OR DEATH FOR [Navarro]; and caused [Navarro] to be placed in fear of bodily injury or death or fear that an offense would be committed against [Navarro's] property, and would cause a reasonable person to fear BODILY INJURY OR DEATH FOR [Navarro].[5]

The indictment contained an enhancement paragraph that stated appellant had previously been convicted of stalking.

### D. Was there error in the jury charge?

During the charge conference the trial court concluded the State intended to charge appellant with the felony offense of stalking and the jury charge would reflect that intention by adding causation language to Count 1. To that end, the jury charge tracked the Penal Code section governing the offense of stalking, which provides, in relevant part, that a person commits the felony offense of stalking "if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person, knowingly engages in conduct that" (1) "constitutes an offense [of harassment] under Section 42.07,"[6] (2) "*causes* the other person . . . to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended; and (3) "would *cause* a reasonable person under circumstances similar to the circumstances of the other person to . . . feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended." TEX. PENAL CODE ANN. § 42.072 (a)(1),

---

[5] The specific conduct alleged in Count 2 was "leaving an item on [Navarro's] car," and in Count 3 was "placing a tracking device on [Navarro's] car[.]"

[6] A person commits the offense of harassment "if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another . . .[.]" TEX. PENAL CODE ANN. § 42.07(a)(7).

(2)(B), (3)(D) (emphasis added). The charge also alleged four instances of harassment as the predicate offenses for stalking.

On appeal, appellant asserts Count I does not reference or allege that his actions *caused* Navarro either to be placed in fear of death, serious bodily injury, or harm to her property or that his actions *caused* Navarro to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. Therefore, according to appellant, Count I omitted an element of the felony offense of stalking and the trial court erred by electing to "clean up" the indictment by adding causation language to the application paragraph in the jury charge and thereby instruct the jury on the felony offense of stalking.

As appellant correctly points out, harassment is generally a misdemeanor that becomes a felony only when, as applicable to this case, the harassment "causes [the complainant] to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended; and "would cause a reasonable person under circumstances similar to the circumstances of the other person to . . . feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended." *Id.* §§ 42.07(c); 42.072(a)(1), (2)(B), (3)(D). Here, Count I did not include causation language. However, the issue is whether the State intended to charge, and appellant had notice that he would be charged with, a felony. The question presented here is analogous to the question of when an indictment vests a district court with jurisdiction over a criminal case when the indictment appears to allege only a misdemeanor, but the State intended to allege a felony.[7]

---

[7] The issue of jurisdiction in these cases arose because the Texas Code of Criminal Procedure provides that district courts "have original jurisdiction in criminal cases of the grade of felony." TEX. CODE CRIM. PROC. ANN. art. 4.05. A district court lacks jurisdiction over misdemeanor charges, except "misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code." *Id.*

In *Teal v. State*, an indictment returned in district court alleged the defendant hindered the arrest of a person who was a felon, but the indictment failed to specify that the defendant had knowledge of the fugitive's felony status. 230 S.W.3d 172, 173 (Tex. Crim. App. 2007). The element that was missing in the indictment was whether the defendant knew the other person was a felony fugitive. *Id.* at 181. The *Teal* Court concluded as follows:

> the indictment, as a whole, was sufficient to vest the district court with subject-matter jurisdiction and give the defendant notice that the State intended to prosecute him for a felony offense. It alleged whom appellant was hiding (Brown); it stated the offense Brown was hiding from (a felony); it alleged that appellant told police that Brown was not present. Because Brown was alleged to be a fugitive "for the offense of Failure to Comply with Registration as a Sex Offender" which is a felony, the district court could conclude, from the face of the charging instrument, that the State intended to charge a felony hindering apprehension offense. It certainly was a defective indictment because it omitted one of the two elements that raise hindering apprehension from a misdemeanor to a felony, but it was nonetheless sufficient to vest jurisdiction—it charged "an offense" and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense.

*Id.* at 182.

In *Kirkpatrick v. State*, the appellant claimed the trial court did not have jurisdiction because the indictment, as worded, only charged a misdemeanor and not a felony. 279 S.W.3d 324, 326 (Tex. Crim. App. 2009). The parties agreed the face of the indictments alleged misdemeanor tampering with a governmental record because the indictments failed to contain language that would charge a felony offense. *Id.* The *Kirkpatrick* Court acknowledged the indictments charged a misdemeanor and omitted a necessary element for the felony offense, nevertheless, the Court held that,

> although the indictment properly charged a misdemeanor and lacked an element necessary to charge a felony, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the charging of the felony offense was intended. Further, the face of each indictment contains a heading: "Indictment–Tampering with a Governmental Record 3rd Degree Felony,—TPC § 37.10(a)-

Code 73990275." The Penal Code section was easily ascertainable, and the notation that the offense was a third-degree felony clearly indicated that the state intended to charge a felony offense and that the district court had subject-matter jurisdiction. Appellant had adequate notice that she was charged with a felony.

*Id.* at 328–29.

In *Jenkins v. State*, the Court of Criminal Appeals noted its "holding in *Kirkpatrick* was based on more than the bare charging language" because the *Kirkpatric* Court based its holding on the fact that (1) the felony offense existed, (2) the indictment's return in a felony court put appellant on notice that the charging of a felony offense was intended, and (3) the face of each indictment contained a heading stating the offense was "tampering with a Governmental Record 3rd Degree Felony – TPC sec 37.10(a) – Code 73990275." 592 S.W.3d 894, 900 (Tex. Crim. App. 2018).

The above cases inform our conclusion here that appellant was on notice the State intended to charge him with a felony and only a felony. *Delarosa v. State*, 677 S.W.3d 668, 684 (Tex. Crim. App. 2023) (Keller, J., dissenting) ("It is true that *Kirkpatrick* and *Jenkins* are not quite like this case. In *Kirkpatrick* and in *Jenkins*, the issue was jurisdiction, not sufficiency of the evidence. But that is beside the point. If an unobjected-to indictment charges a particular offense, then it does so for all purposes—jurisdiction, notice, and sufficiency of the evidence.").

In this case, the indictment arguably omitted a necessary element for felony stalking. Even so, the indictment's heading stated the offense as "STALKING – 2ND." All three counts alleged appellant engaged in "the same scheme or course of conduct directed" toward Navarro—language contained only in the stalking statute. *See* TEX. PENAL CODE ANN. § 42.072(a) ("A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person, knowingly engages in conduct . . .[.]"). The indictment contained an enhancement paragraph sufficient to raise the offense from a third-degree

felony to a second-degree felony. *See id.* § 42.072(b) ("An offense under this section is a felony of the third degree, except that the offense is a felony of the second degree if the actor has previously been convicted of an offense under this section . . .[.]").

As a result, the felony offense of stalking was clearly ascertainable by the appellant, and the indictment as a whole clearly indicated the intent was to charge a felony. Therefore, we conclude appellant has not established error in the jury charge and we overrule his second issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

SANDEE BRYAN MARION, Chief Justice (Ret.)

December 19, 2023

Before Palafox, and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment

(Do Not Publish)